**Rusty Lyn BRANTLEY, Appellant,**

v.

**The STATE of Texas, Appellee.**

**Nos. 10–99–046–CR, 10–99–047–CR.**

Court of Appeals of Texas,
Waco.

May 2, 2001.

Rehearing Overruled June 27, 2001.

[black redaction bars]

Stan Schwieger, Law Office of Stan Schwieger, Waco, for appellant.

Robert W. Gage, County and District Attorney for Freestone County, R. Neel McDonald, Asst. District Attorney for Freestone County, Fairfield, for appellee.

Before Chief Justice DAVIS, Justice VANCE, and Justice GRAY.

## OPINION

VANCE, Justice.

A jury convicted Rusty Lyn Brantley of aggravated sexual assault and assessed punishment of 60 years' imprisonment. On appeal, Brantley claims: (1) the trial court's limiting instruction in the jury charge on the alleged extraneous offenses was erroneous; (2) the trial court erred in failing to strike "for cause" jurors who stated they could not consider probation as punishment; (3) the trial court erred in not granting his motion for new trial based upon jury misconduct in considering parole eligibility; (4) Code of Criminal Procedure article 38.37 is unconstitutional; and (5) the trial court erred in overruling his objection to the State's alleged improper jury argument. We will affirm.

## BACKGROUND

On August 3, 1998, the Freestone County police department received a call concerning the sexual abuse by Brantley of his stepchildren, eight-year old D.W. and seven-year old J.W. The children were removed and taken to Scotty's House, a child advocacy center in Bryan, for physical examination and interview. A certified pe-diatric nurse practitioner examined the children and found scar tissue on both, consistent with anal intercourse.

At trial, J.W. testified to the abuse and stated that he and his brother first told their aunt about the assaults. J.W. claimed he saw Brantley abuse his brother on more than one occasion. D.W. also testified but stated that he did not remember anything happening to him. A clinical psychologist who treated the children testified that they both suffered from a wide range of symptoms consistent with sexual abuse. During treatment, D.W. discussed being sexually abused by Brantley.

Brantley called the children's aunt as his first witness. Brantley attempted to show that the aunt had ulterior motives in reporting the "incidents" to the police. He also called a licensed clinical social worker. The social worker criticized the methodology of the treating psychologist and stated that Brantley did not meet any of the profiles of a sex offender. Brantley next took the stand and denied any sexual abuse of the children. He claimed that the children's aunt manipulated them into fabricating the story to gain custody and to acquire social security benefits.

## LIMITING INSTRUCTION

By six indictments Brantley was charged with six separate acts of aggravated sexual assault of D.W. and J.W. The State filed a notice of joinder of prosecution under section 3.02(b) of the Penal Code in which it joined all indictments for trial. TEX. PEN.CODE ANN. § 3.02(b) (Vernon 1994). Brantley filed a motion to sever, but the motion was denied because the court found Brantley would not be unfairly prejudiced by joinder of the offenses. TEX. PEN.CODE ANN. § 3.04(c) (Vernon Supp. 2001).

■ During trial, the State presented proof of multiple commissions of sexual acts as alleged in the indictments. Before trial, Brantley filed a motion for election of acts and a request for limiting instructions.[1] The motion was not ruled upon until the conclusion of the State's case. At the close of the State's evidence, it chose to proceed on only two indictments, one alleging an offense against D.W. and the other an offense against J.W. The court then granted Brantley's request for an extraneous-act limiting instruction as to all the instances of sexual abuse which were not charged to the jury. On appeal, Brantley complains only about the limiting instruction.

Article 38.37, Section 2, provides:

Notwithstanding Rules 404 and 405, Texas Rules of Criminal Evidence, evidence of other crimes, wrongs, or acts committed by the defendant against the child who is the victim of the alleged offense shall be admitted for its bearing on relevant matters, including:

(1) the *state of mind of the defendant and the child;* and

(2) the previous and subsequent relationship between the defendant and the child.

TEX.CODE CRIM.PROC.ANN. art. 38.37, § 2 (Vernon Supp.2001) (emphasis added).

We have previously stated that when interpreting article 38.37, section 2, we look to its plain meaning. *Pool v. State,* 981 S.W.2d 467, 469 (Tex.App.—Waco 1998, pet. ref'd).

The trial court's charge included the following limiting instruction concerning the extraneous acts:

You are further instructed that if there is any testimony before you in this case regarding the defendant's having committed offenses against [D.W.] other than the offense alleged against him in the indictment and in the charge in this case, you cannot consider said testimony for any purpose unless you find and believe beyond a reasonable doubt that the defendant committed such other offenses, if any were committed, and even then you may only consider the same in determining *the state of mind of the child,* [D.W.], in connection with the offense, if any, as alleged in the indictment and charge in this case, and for no other purpose.

(Italics added).

Brantley made a timely and specific objection to this instruction, because it omitted part of the statute which informed the jury that the acts could also be used to determine Brantley's "state of mind." The trial court overruled his objection, and he claims this was error.

■ "When reviewing charge errors, an appellate court must undertake a two-step review: first, the court must determine whether error actually exists in the charge, and second, the court must determine whether sufficient harm resulted from the error to require reversal." *Abdnor v. State,* 871 S.W.2d 726, 731–32 (Tex. Crim.App.1994). Because the jury charge

---

1. In his motion for election, Brantley cited *Scoggan v. State,* 799 S.W.2d 679, 680 n. 3 (Tex.Crim.App.1990), as a basis for requiring the State to make an election. The Court of Criminal Appeals in *Scoggan* stated, "When the evidence shows two or more acts of intercourse, each of which is an offense for which the defendant may be convicted, and the indictment charges only one offense, the State is required to elect which act it will rely upon to secure a conviction, provided the accused makes a motion for election." *Id.* However, Brantley was not charged with one indictment supported by evidence of multiple acts, but instead was charged with multiple indictments of similar conduct. Therefore, *Scoggan* is not applicable, and the State was not required to make an election at that time.

is so essential to the jury's deliberations, the charge must include an accurate statement of the law. *Id.* at 731.

■ The instruction given by the trial court clearly omitted Brantley's "state of mind." As a result, it was erroneous and constitutes error.[2] However, an erroneous jury charge does not result in automatic reversal of a judgment of conviction. Tex. Code Crim. Proc. Ann. art. 36.19 (Vernon 1981); *Ferguson v. State,* 2 S.W.3d 718, 720 (Tex.App.—Austin 1999, no pet.). We must consider whether sufficient harm resulted from the error so as to require reversal of the judgment. *Abdnor,* 871 S.W.2d at 731–32.

■ Error properly preserved by an objection to the charge will require reversal "as long as the error is not harmless." *Hutch v. State,* 922 S.W.2d 166, 171 (Tex. Crim.App.1996). This has been interpreted to mean that any harm, regardless of its degree, will be sufficient to require reversal. *Id.* The Court of Criminal Appeals recently decided that on appeal no party bears the burden to prove harm from jury charge error. *Ovalle v. State,* 13 S.W.3d 774, 787 (Tex.Crim.App.2000). Specifically, the court found "[n]o party should have a burden to prove harm from an error . . . . Burdens and requirements of proving actual facts are appropriate in the law of evidence, but they have little meaning for the harmless-error decision." *Id.*

■ During trial, the State presented proof of multiple commissions of sexual acts against the children. The State's evidence included testimony from the children, a psychologist, outcry evidence, as well as physical evidence which all indicated multiple acts of sexual abuse. Brantley claims he was harmed by the court's instruction because it was an incorrect statement of the law which allowed the jury to use the evidence in an inappropriate manner. The State responds that Brantley was actually helped by the charge, because it unduly limited the use of the damaging evidence.

■ We agree that no harm occurred. If the State is entitled to have the jury consider the extraneous offenses for both the state of mind of the defendant as well as the state of mind of the child, then no harm could come to Brantley by the trial court restricting consideration of this evidence to a greater degree than allowed. Here, there was no objection to the charge by the State. By not objecting, the State accepts any greater burden placed upon it by the charge. *Nickerson v. State,* 782 S.W.2d 887, 890 (Tex.Crim.App.1990). We find the error in the jury charge was harmless. *Hutch,* 922 S.W.2d at 171. Issue one is overruled.

## CHALLENGES FOR CAUSE

During voir dire, Brantley's counsel asked the venire whether they could consider probation if the offense was aggravated sexual assault of a child. His counsel stated:

Now, what we talked about or what [the prosecutor] talked about is in a certain case of aggravated sexual assault, and he gave you a couple of hypotheticals. Now, we're talking about in the case—in a hypothetical case that involves children, just some case, is it possible—now, I'm not saying that you would, could or should, but there is a broad range of punishment in this case. We're talking from five years, from down there, to ninety-nine years. And the potential also exists in a certain case that probation may be granted.

2. The court did not charge on the "relationship between the defendant and the child."

Now, just knowing that the case may involve children, in a hypothetical case, do you automatically rule out probation? Would you—in a—in a certain case, not knowing anything about it, do you just say, "No way, I'm not going to give probation?"

Brantley's counsel then questioned each veniremember individually. At some point, in order to clarify the question, Brantley's counsel stated:

Let me rephrase it, because I think maybe you're getting slightly off track. The law says that you don't have to—we don't know anything about the case, is that correct, at this point, don't know a thing? All I'm asking is could you consider the fact of probation in punishment for a case? Would you just automatically, if he's—if he's found guilty, or if anybody is found guilty of this offense, there's not a chance in this lifetime I'm going to consider probation.

In addition, one veniremember later asked Brantley's counsel the following:

A. Are we—this person is convicted of aggravated assault of a child? Is that what you're asking?

Q. Yes, ma'am.

A. No, I would not consider it.

Brantley challenged for cause twenty-three jurors who said they could not consider the full range of punishment. The trial court sustained seven of these challenges and overruled the remaining sixteen. Each side exercised its peremptory strikes, and the clerk called the jury. Then, prior to the jury being sworn, Brantley requested additional peremptory strikes for two jurors on the panel who he had challenged for cause for not being able to consider the full range of punishment, but which challenges the trial court had denied. The trial court denied his request.

## A. Discussion

■ Brantley contends the trial court erred in denying his challenges "for cause" against jurors who stated they could not consider community supervision for aggravated sexual assault of a child. Qualified prospective jurors must be willing to consider the full range of punishment applicable to the offense submitted for their consideration. *Banda v. State,* 890 S.W.2d 42, 55 (Tex.Crim.App.1994). The inability to do so constitutes a bias or prejudice against the law and renders a prospective juror challengeable for cause by the defendant or by the State. *Fuller v. State,* 829 S.W.2d 191, 200 (Tex.Crim.App.1992); *Pyles v. State,* 755 S.W.2d 98, 103 (Tex. Crim.App.1988). "Denial of a proper challenge for cause is error because the make-up of the jury affects its decision." *Johnson v. State,* 43 S.W.3d 1, 5 (Tex.Crim.App. 2001). Accordingly in determining whether the trial court erred, we will address: (1) whether community supervision was within Brantley's full range of punishment, and (2) what offense was submitted for the jury's consideration.

### 1. Is community supervision within Brantley's full range of punishment?

The legislature has prescribed a range of punishment for each offense. *Sadler v. State,* 977 S.W.2d 140, 142 (Tex.Crim.App. 1998). Brantley's indictments allege he committed aggravated sexual assault, a felony of the first degree. TEX. PEN.CODE ANN. § 22.021(e) (Vernon Supp.2001). "An individual adjudged guilty of a felony of the first degree shall be punished by imprisonment in the institutional division for life or any term of not more than 99 years or less than 5 years." TEX. PEN.CODE ANN. § 12.32(a) (Vernon 1994). If a jury sentences an individual to less than ten years, it may recommend to the judge that the imposition of the sentence be suspended and the defendant be placed on community

supervision. Tex.Code Crim. Proc. Ann. art 42.12, § 4(a), (d)(1) (Vernon Supp.2001). For purposes of this case, we assume without deciding that community supervision is within the full range of punishment for aggravated sexual assault and was available to Brantley.

### 2. What offense was submitted for the jury's consideration?

We must determine what is meant by the phrase, "the offense submitted for the jury's consideration." *Banda,* 890 S.W.2d at 55. Although there is no binding authority on this issue, we are guided by two concurring opinions issued on the same day in the Court of Criminal Appeals. *Johnson v. State,* 982 S.W.2d 403, 407 (Tex.Crim.App.1998) (Keller, J., concurring); *Sadler,* 977 S.W.2d at 144 (Baird, J., concurring).

### a. Johnson v. State

The issue in *Johnson* was whether a prospective juror must keep an open mind with respect to punishment regardless of whether the defendant might be found guilty as a principal or as a party. *Johnson,* 982 S.W.2d at 406. The majority[3] wrote:

> It is true, as a general matter, that "[a] prospective juror . . . must be able to consider the full range of punishment for the offense generally, and not for some specific manner and means of committing the offense." *Johnson v. State,* supra, slip op. at 5. After all, the law actually requires jurors to use the facts of the case being tried to tailor the punishment to the offense and the offender. *Sadler v. State,* 977 S.W.2d 140 (Tex.Crim.App.1998). But the Legislature has determined and codified that the full range of punishment for any

offense is the same whether the defendant is found guilty as a principal or as a party. Therefore, a prospective juror who does not "believe in the full range of punishment," *Woodkins v. State,* 542 S.W.2d at 862, for either a defendant found guilty as a principal or a defendant found guilty as a party, is biased against the law as established by the Legislature.

*Id.* Judge Keller agreed with the majority. Her concurrence begins by stating: "Qualified prospective jurors must be willing to consider the full range of punishment applicable to the offense submitted for their consideration." *Id.* at 407 (citing *Banda,* 890 S.W.2d at 55). She wrote separately to define the phrase "the offense submitted for consideration," utilizing three different theories: (1) the classification approach, (2) the holistic approach, and (3) the evidentiary approach. *Id.*

Under the classification approach, "the offense submitted for consideration" is defined "as any statutory classification that could be applicable to the case at hand to which the full range of punishment would apply." *Id.* "Statutory classifications would include the elements of an offense as defined in a section or subsection of a statute" which were charged in the indictment. *Id.* "Under this definition, any combination of statutory elements constituting a convictable offense in the case in question would be an 'offense submitted for consideration.'" *Id.*

According to the holistic approach, a prospective juror must be able to consider the full range of punishment for the offense generally, and not for a particular statutory classification. *Id.* at 408. Under this approach, a juror would only be dis-

---

**3.** Judge Baird joined the majority opinion in *Johnson v. State,* 982 S.W.2d 403 (Tex.Crim. App.1998).

qualified if the juror could not consider the full range of punishment for any of the possible means of committing the offense. *See id.*

The evidentiary approach entails examining the particular conduct committed by the defendant and asking a prospective juror if he could consider the full range of punishment for a person committing that conduct. *Id.* This approach has been held to be invalid. *Sadler,* 977 S.W.2d at 143 (prospective juror is not required to consider the full range of punishment under the particular facts of the case).

Of the remaining two approaches, Judge Keller endorsed the classification approach. *See Johnson,* 982 S.W.2d at 408. She states: "A persuasive argument can still be made ... that: the Legislature must have intended that prospective jurors be able to consider the full range of punishment for the different statutory classifications because it subjected those classifications to the range of punishment provided." *Id.* at 409. Moreover, "the classification approach—holding that any statutory classification, implicated by the indictment, to which a range of punishment applies constitutes the submitted offense—creates a bright-line rule that is easy to apply." *Id.* at 410.

Aggravated sexual assault can be committed in a number of ways. Tex. Pen. Code Ann. § 22.021. Brantley's indictments alleged he committed the offenses by intentionally or knowingly causing the penetration or contact of the anus of J.W. and D.W., who were then children under the age of fourteen, with his penis. The statutory classification implicated by these indictments includes elements of offenses defined by section 22.021(a)(1)(B) and (2)(B) of the Penal Code, which specifically include victims under the age of fourteen. Tex. Pen.Code Ann. § 22.021(a)(1)(B), (2)(B). As a result, any venireman who could not consider the full range of punishment for this form of aggravated sexual assault was challengeable for cause under the classification approach.

### b. Sadler v. State

Judge Baird's concurrence in *Sadler* impliedly follows the classification approach as well. *See Sadler,* 977 S.W.2d at 144. In *Sadler,* the appellant asked the venire if anyone could not consider the minimum punishment if a child was "a victim and/or present" during the commission of an aggravated robbery. *Id.* at 142. The majority in *Sadler* determined that the prospective jurors' responses to the question showed only that they would consider the facts of the commission of the offense in determining the appropriate punishment. *Id.* at 143. The prospective jurors' responses did not indicate that they could not consider the full range of punishment for the offense as defined by law. *Id.*

Judge Baird agreed with the majority, but wrote separately to make clear that in some instances, the inquiry at issue could result in a valid challenge for cause. *Id.* at 143–44. He stated, "If the crime, as defined by law, specifically includes the element that the victim is a child, then in those types of inquiry, a juror would be subject to a challenge for cause if the full range of punishment could not be considered." *Id.* at 144. Judge Baird further stated that aggravated sexual assault of a child was one such crime. *Id.* at 144 n. 3.

### c. Conclusion

 We agree with Judge Keller and Judge Baird that the classification approach is preferable and was implied by the decision in *Banda. Banda,* 890 S.W.2d at 55. "A principled, bright-line rule is drawn by a rule that states: a prospective juror must be able to consider the full range of punishment for any legislative classification, implicated by the in-

dictment, to which the range of punishment could apply." *Johnson,* 982 S.W.2d at 410. As a result, the trial court erred in denying Brantley's challenge for cause against venirepersons who could not consider community supervision for aggravated sexual assault of a child as defined by section 22.021(a)(1)(B) and (2)(B) of the Penal Code. *See Banda,* 890 S.W.2d at 55.

### B. Harm Analysis

In *Johnson,* the Court of Criminal Appeals determined that the trial court erred in denying the defendant's challenge for cause and remanded the case for a harm analysis under Rule of Appellate Procedure 44.2(b). *Johnson,* 982 S.W.2d at 406. On remand, the Fourteenth Court of Appeals declared the error harmless. The Court of Criminal Appeals has since vacated this judgment. *Johnson v. State,* 996 S.W.2d 288, 290 (Tex.App.—Houston [14th Dist.] 1999), *judgm't vacated by,* 43 S.W.3d 1, 7 (Tex.Crim.App.2001).

In the most recent *Johnson* opinion, the Court of Criminal Appeals reiterated that "[h]arm for the erroneous denial of a challenge for cause is determined by the standard in Rule of Appellate Procedure 44.2(b)." *Johnson,* 43 S.W.3d at 2. The Court reasoned that "[t]he appropriate standard of harm is to disregard an error unless a substantial right has been affected. ... [A] substantial right is affected when the error has a substantial and injurious effect or influence in determining the jury's verdict." *Id.* at 4 (citation omitted). The Court held that:

Since 1944, harm has been demonstrated, and the error held reversible, when the appellant (1) exercised his peremptory challenges on the venire member whom the trial court erroneously failed to excuse for cause, (2) exhausted his peremptory challenges, (3) was denied a request for additional peremptory challenges, and (4) identified an objectionable juror who sat on the case.

*Id.* at 5–6 (citing *Wolfe v. State,* 147 Tex. Crim. 62, 178 S.W.2d 274 (1944) (op. on reh'g)) (footnote omitted).

The record indicates that Brantley did not use his peremptory challenges to cure all the erroneous denials of his challenges for cause. Brantley challenged for cause twenty-three jurors who said they could not consider the full range of punishment. The trial court sustained seven of these challenges and overruled the remaining sixteen. Each side then exercised its peremptory strikes. Brantley used four strikes against jurors who could not consider the full range of punishment, and six strikes against jurors who were not challenged for cause.[4] The clerk seated the jury, which included two jurors who were challenged for cause for not being able to consider the full range of punishment. Then, prior to the jury being sworn, Brantley requested two additional peremptory strikes for jurors whom he had challenged for cause for not being able to consider the full range of punishment.[5] The trial court denied his request, and the two objectionable jurors who could not consider the full range of punishment sat on the jury.

---

4. See attached Appendix.

5. Brantley requested the two additional peremptory strikes for veniremembers #29 and #30. He claimed these two veniremembers were challenged for cause for not being able to consider probation. Actually, veniremember #30 could consider probation and should not have been challenged. However, veniremember #21 was challenged for cause for not considering probation and the trial court overruled his objection. Therefore, two veniremembers, #21 and #29, sat on Brantley's jury who could not consider probation.

Because Brantley could have used his remaining six peremptory strikes against the jurors he complains about on appeal, we find that he did not use his peremptory challenges to cure the erroneous denial of the challenges for cause. *Id.* ("exercised his peremptory challenges on the venire-member whom the trial court erroneously failed to excuse for cause"). As a result, Brantley did not satisfy the steps required in *Johnson* to show harm. *Id.* Issue two is overruled.

## JURY MISCONDUCT

In his third issue, Brantley argues the trial court erred in denying his motion for new trial based upon jury misconduct. Brantley contends the jury considered parole law in direct violation of their instructions and oaths as jurors, thus denying him a fair punishment hearing. TEX.CODE CRIM. PROC. ANN. art. 37.07, § 4(a) (Vernon Supp.2001).[6] At the hearing on the motion, defense counsel called six jurors to testify about the jury's deliberations. Juror Dawson testified:

Q. Okay. And—in deliberations in—in the jury room, did you discuss parole as applied to Mr. Brantley?

A. Yes.

Q. Okay. And would you tell the court exactly what the conversation was as [to] the existence of parole and Mr. Brantley?

A. Well, I can't tell you exactly because I don't remember exactly what all was said.

Q. Okay.

A. But for my part, I wanted the children to be grown before he was up for parole and that way, maybe, they could have their say on whether he got parole or not.

Q. Okay. And so, in arriving at sixty years, did you consider parole law in arriving at sixty years?

A. That would be the thirty years; right?

Q. Right. And, so, basically what—in arriving at your decision, ma'am, was it your intention, as your vote, that he serve thirty years before he gets out of prison.

A. Yes.

. . .

Q. Okay. And, so, in fact, in order to assure that he serve thirty years, you voted for a harsher punishment; is that correct?

A. Right.

Brantley claims that from the testimony of Juror Dawson, it is apparent that the jurors violated their responsibility and authority as it was explained to them and

---

**6.** Section 4(a) states: "In the penalty phase of the trial of a felony case in which the punishment is to be assessed by the jury rather than the court, ... the court shall charge the jury in writing as follows:

. . .

"Under the law applicable in this case, if the defendant is sentenced to a term of imprisonment, he will not become eligible for parole until the actual time served equals one-half of the sentence imposed or 30 years, whichever is less, without consideration of any good conduct time he may earn. If the defendant is sentenced to a term of less than four years, he must serve at least two years

before he is eligible for parole. Eligibility for parole does not guarantee that parole will be granted.

. . .

"You may consider the existence of the parole law and good conduct time. However, you are not to consider the extent to which good conduct time may be awarded to or forfeited by this particular defendant. You are not to consider the manner in which the parole law may be applied to this particular defendant."

TEX.CODE CRIM. PROC. ANN. art. 37.07, § 4(a) (Vernon Supp.2001).

relied on misstatements of the law. The State responds that the court erred in admitting the jurors' testimony because Rule of Evidence 606(b) prohibits such evidence, and even if such testimony were admissible, Brantley has failed to satisfy the *Sneed* requirements for jury misconduct. TEX.R. EVID. 606(b); *Sneed v. State,* 670 S.W.2d 262, 266 (Tex.Crim.App.1984).[7]

■■■■ We agree with the State that under Rule 606(b), the jurors' testimony could not have been the basis of proof of juror misconduct, because the testimony relates solely to matters occurring during deliberations and does not fall within either of the exceptions set out in the Rule. TEX.R. EVID. 606(b). Thus, under the Rule, jurors' testimony regarding their alleged separate deliberations and compromise verdict is inadmissible for the purpose of attacking the validity of the verdict, and the trial court erroneously admitted such evidence. *Sanders v. State,* 1 S.W.3d 885, 887 (Tex.App.—Austin 1999, no pet.). However, because no objection was raised at the hearing to the admission into evidence of this testimony, the applicability of Rule 606(b) is not before us. *Bader v. State,* 777 S.W.2d 178, 181 (Tex.App.—Corpus Christi 1989, no pet.).

Prior to the enactment of Rule 606(b), for a jury's discussion of parole law to be reversible error, the defendant had to produce juror testimony as to each of the following five factors: (1) a misstatement of the law; (2) asserted as a fact; (3) by one professing to know the law; (4) which is relied on by other jurors; and (5) who for that reason changed their vote to a harsher punishment. *Sneed,* 670 S.W.2d at 266; *Porter v. State,* 969 S.W.2d 60, 68 (Tex.App.—Austin 1998, pet. ref'd). It is not clear to us that Brantley has established any of the above factors.

Juror Dawson, whom Brantley relies on to support his complaint, stated that she could not remember exactly what was said, and that she relied on only her interpretation of the court's charge in assessing punishment. Dawson understood the charge to mean that if she voted for sixty years, Brantley would have to spend at least thirty years in prison. This interpretation is correct and does not illustrate a misstatement of the law or an assertion of fact. *See* TEX.CODE CRIM. PROC. ANN. art. 37.07, § 4(a).

In addition, the charge instructed the jurors not to consider the manner in which parole law could be applied to Brantley or how long he would be required to serve the sentence they imposed before parole eligibility. The record reveals that jurors discussed the minimum time the defendant would be required to serve. However, Dawson's testimony indicated the jurors were not influenced by such discussion. There was also no testimony that any alleged statement was made by someone who professed to know the law or that a misstatement of the law was relied on by anyone to vote for a harsher punishment. No other juror questioned by Brantley at the hearing stated that they voted for a harsher punishment because of the discussion of the parole law. In short, our review of the record reveals the discussions did not affect the verdict. We find the trial judge did not abuse his discretion in denying the motion for new trial. *Porter,* 969 S.W.2d at 68. Issue three is overruled.

## ARTICLE 38.37

■■■■ Brantley contends in his fourth issue that Code of Criminal Procedure ar-

---

7. The viability of the *Sneed* factors has been called into question by the 1998 amendments to Rule 606(b). *Hines v. State,* 3 S.W.3d 618, 621 (Tex.App.—Texarkana 1999, pet. ref'd)(concluding that the 1998 amendment to Rule 606(b) overrides the holding in *Sneed* ).

ticle 38.37 is unconstitutional because it permits a blanket introduction of propensity evidence, and thus violates his due process rights. Brantley's argument was recently presented to and rejected by the Tyler Court of Appeals. *Jenkins v. State*, 993 S.W.2d 133, 136 (Tex.App.—Tyler 1999, pet. ref'd). In *Jenkins*, the court reasoned that other acts of misconduct may explain the charged act, special circumstances surrounding the sexual assault of a child outweigh normal concerns associated with this evidence, and fairness is preserved by a defendant's right to cross examination. *Id.* We agree with the court's analysis and conclusion. *Id.; see also Phelps v. State*, 5 S.W.3d 788, 798 (Tex.App.—San Antonio 1999, pet. ref'd). Issue four is overruled.

### JURY ARGUMENT

■ Brantley's last issue contends the State engaged in improper jury arguments. Jury arguments must fall within the following four categories: (1) summation of the evidence, (2) reasonable deduction from the evidence, (3) answer to the argument of opposing counsel, and (4) plea for law enforcement. *Cantu v. State*, 939 S.W.2d 627, 633 (Tex.Crim.App.1997). Error results from improper jury argument only if, examined in light of the entire record, the argument is extreme, is manifestly improper, injects new and harmful facts into the case, or violates a mandatory statutory provision. *Kelly v. State*, 18 S.W.3d 239, 244 (Tex.App.—Amarillo 2000, no pet.). Remarks of counsel must be considered within the context in which they appear. *Id.*

■ Brantley maintains that the State improperly struck at him over his counsel's shoulders. The following occurred during the State's argument:

> STATE: He doesn't have to prove anything; I have to prove it, but when he starts putting his own witness on the stand and trying to build some fanciful defense, you're certainly entitled to consider how weak that defense is. He wants you to speculate and chase rabbits.

> DEFENSE: Your Honor, I'm going to object. That's striking at defendant over counsel's shoulders.

> THE COURT: Overruled.

> STATE: He wants you to speculate, based on his evidence, that Wayna Ward programmed this individual because she was—the kids because she was mad at the—at the Brantley and wife.

> . . .

She put them up to it. Bull. Bull. Bull. Bull. Don't fall for those tricks.

> DEFENSE: Your Honor, once again, I'm going to object to striking at defendant over counsel's shoulders.

> THE COURT: Overruled.

The Court of Criminal Appeals has analyzed similar jury arguments. *Mosley v. State*, 983 S.W.2d 249, 258 (Tex.Crim.App. 1998). In *Mosley*, the court found the prosecutor's argument was inappropriate when he indicated that the defense counsel wanted the jury to "take a side road, a series of side roads, rabbit trails, and a rabbit trail that will lead . . . to a dead-end." *Id.* The court cautioned that legitimate arguments by defense counsel cannot serve as a basis for permitting prosecutorial comments that "cast aspersion on defense counsel's veracity." *Id.* at 259 (citing *Dinkins v. State*, 894 S.W.2d 330, 357 (Tex.Crim.App.1995)). The arguments in *Mosley* and in the present case referred to counsel personally and suggested that counsel wanted to divert the jury from the truth. As the court did in *Mosley*, we find the arguments were inappropriate. *See Mosley*, 983 S.W.2d at 259.

The *Mosley* court applied Rule of Appellate Procedure 44.2(b) because it found that such comments constitute "other errors" not of constitutional dimension. *Id.* Although of special concern, improper comments on defense counsel's honesty have never been held to amount to a constitutional violation. *Id.* The court looked to three factors to determine harm: (1) severity of the misconduct (magnitude of prejudicial effect of the comments); (2) measures adopted to cure the misconduct such as instruction by the judge; and (3) the certainty of conviction absent the misconduct (strength of evidence supporting conviction). *Id.*

 Looking at the first factor, the comments made by the prosecutor in this case are similar in content and tone to those in *Mosley*. *See id.* at 258. In *Mosley*, the court analyzed the first factor and determined the comments were mildly inappropriate. *Id.* at 260. It further stated:

Such comments do not directly accuse the defense attorneys of lying, and the comments do not suggest that any evidence was manufactured. *See also Dinkins*, 894 S.W.2d at 357 (similar comments not as egregious as an accusation that defense counsel manufactured evidence). At most, the comments indicate that the defense may be attempting to distort the jury's view of the evidence through clever argument. Such a comment does not inject new facts into the record, and the jury is in a position to evaluate the truthfulness of the prosecutor's assertion. Such a comment may even backfire if the jury disagrees with the prosecutor's assessment of defense counsels' actions. We do not condone the prosecutor's actions, but the severity of the misconduct is relatively small.

*Id.* We apply the court's analysis and find the first factor of the harm test does not weigh very heavily in Brantley's favor. The second factor does not come into play in this case, which weighs in Brantley's favor. Regarding the third factor, the jury heard the victims testify as to the offenses and as to the identity of the perpetrator. In addition, medical and psychological evidence from expert witnesses substantiated the victims's testimony. As a result, the certainty of Brantley's conviction absent the prosecutor's misconduct was strong. Balancing these reasons, we find the error to be harmless. Issue five is overruled.

## CONCLUSION

Having overruled all of Brantley's issues or finding them to be harmless, we affirm the judgment.

## APPENDIX

| | Name | Challenged? | Sustained? | Brantley strike? | State strike? |
|---|---|---|---|---|---|
| 1. | West | | | Yes | |
| 2. | Baty | | | | Yes |
| 3. | Capp | | | | Yes |
| 4. | Stephenson | Yes | Yes | | |
| 5. | **Vaughn** | | | | |
| 6. | **Dawson** | | | | |
| 7. | Collins | | | Yes | |
| 8. | Finley | Yes | Yes | | |
| 9. | Freeman | Yes | Yes | | |
| 10. | Dildy | | | Yes | |
| 11. | **Ratliff** | | | | |
| 12. | **Walker** | | | | |
| 13. | **Ricks** | | | | |
| 14. | **Oliver** | | | | |

| | | | | | |
|---|---|---|---|---|---|
| 15. | Wilson | Yes | No | Yes | |
| 16. | Bradley | | | | Yes |
| 17. | **Hall** | | | | |
| 18. | Curry | | | Yes | Yes |
| 19. | Eddings | | | Yes | |
| 20. | Horton | | | | Yes |
| 21. | **Davis** | Yes | No* | | |
| 22. | Morrison | Yes | Yes | | |
| 23. | Beene | Yes | Yes | | |
| 24. | Ward | | | Yes | |
| 25. | **Alexander** | | | | |
| 26. | Douglas | | | | Yes |
| 27. | Conrad | Yes | Yes | | |
| 28. | **Rounds** | | | | |
| 29. | **Patterson** | Yes | No* | | |
| 30. | **Solley** | | | | |
| 31. | Reynolds | | | | |
| 32. | Harris | Yes | No | Yes | Yes |
| 33. | Wilson | Yes | No | Yes | Yes |
| 34. | Willis | Yes | No | Yes | Yes |

Note:

Veniremembers in bold actually served on the jury.

* Jurors Davis and Patterson were challenged for cause for not considering probation, the trial court overruled the objection, and Brantley did not use a peremptory strike against them.