Freddie Junior Goessler

COURT OF APPEALS

SECOND DISTRICT OF TEXAS

FORT WORTH

 
NOS.   2-03-451-CR

 
2-03-452-CR

FREDDIE JUNIOR GOESSLER APPELLANT

V.

THE STATE OF TEXAS STATE

------------

FROM THE 396TH DISTRICT COURT OF TARRANT COUNTY

------------

MEMORANDUM OPINION
(footnote: 1)

------------

I. Introduction

A jury convicted Appellant Freddie Junior Goessler of robbery and aggravated robbery with a deadly weapon. 
 After Goessler pled “true” to the habitual offender allegations in the indictment, the trial court assessed punishment at thirty-five years’ confinement for each count, to be served concurrently.

Goessler raises five points on appeal.  In points one and two, Goessler alleges that the evidence is legally and factually insufficient to support his convictions.  In points three and four, Goessler claims that the trial court reversibly erred and abused its discretion in overruling his objection to the State’s improper closing jury argument.  In his final point, Goessler contends that the trial court reversibly erred and abused its discretion in refusing his request that the lesser included offense of attempted theft be included in the jury charges.  We will affirm.

II. Background Facts

A. Aggravated Robbery

On the night of June 29, 2002, Filliberto Moran was working at the Subway restaurant on East Seminary in Fort Worth, Texas.  As he was getting ready to close the restaurant, a man came in and asked him for a sandwich. When Moran finished making the sandwich, the man took out a knife and hit the cash register with it.  He then told Moran to get a bag and put money in it. Moran put the money in the bag, and the man left the restaurant.  

Moran testified that when he saw the knife, he was afraid and that he thought that the knife could have hurt him and caused him death or serious bodily injury.  He also stated that he did not give the man permission to take the money and that the man took the money while using the knife.  Moran identified Goessler as the man with the knife, both in a pretrial photo spread and at trial.

Fort Worth Police Officer Michael Duer was subsequently dispatched to the Subway restaurant that night.  When Officer Duer arrived, he found that there was only one person in the restaurant–Moran.  According to Officer Duer, Moran was “very nervous, very anxious.  He was shaking, kind of unsure, paranoid.”  Moran described the suspect as a white male, fifty to seventy years old, about six feet, three inches, 175-200 pounds, bald on top with hair on the sides, wearing a white shirt with stripes, and blue or black jeans.  Officer Duer collected from the restaurant a surveillance videotape that had recorded the robbery.

Officer Duer admitted that the knife may have made a stab mark or indentation on the cash register and that the suspect may have left fingerprints on the front door of the business.  However, based on his observation of the contents of the videotape, he decided that the crime scene unit did not need to come to the scene.

According to 
Tim Baker, Supervisor of the county photo lab, at 19:10:31 on the tape, the man robbing the Subway restaurant appeared to hit the top of the register with an object in his right hand.  In the next few seconds, the employee took a bag from beneath the counter, opened the register, placed the contents of the register into the bag, removed the drawer from the register, and handed the man the bag containing the contents of the register.  At 19:11:31, the man exited the business.  About six days prior to trial, Baker went to the Subway restaurant and found that the register was not there. 

In preparation for trial, Elvis D. Wells, Jr., a criminal investigator with the Tarrant County D.A.’s office, went to the Subway restaurant to look for the cash register present at the shop on the night of the robbery; he did not find it. He subsequently found it at another Subway restaurant in South Arlington on the morning of the trial.  Investigator Wells looked at the top of the register, where the video showed the knife coming into contact with it, but he found no marks on the register. 

B. Robbery

On the night of July 11, 2002, Tuan M. Dao and his sister, Kim, were working at the same Subway restaurant on East Seminary.  A man walked up to the drive-through window and told Tuan to “sack up the money.”  There was a brown paper bag in one of the man’s hands.  Tuan stated that he was scared, that he thought that the suspect might have a gun or a knife, and that he quickly closed the drive-through window.  Tuan told Kim to call the police, and she began trying to do so.  The man ran to the front door of the restaurant and tried to open it; however, the door was already locked.  Tuan saw the man through the glass door.  The man began shaking the door, then he turned and ran away. 

Fort Worth Police Officer Steve Fineman was dispatched on a robbery call to the Subway restaurant that same night.  Because he had some knowledge of the Vietnamese language, he stayed at the scene to help the other officers in case Tuan or Kim needed translation.  Officer Fineman described Tuan and Kim as “[a]gitated, visibly shaken.  They appeared excited and shaken.  They were obviously very distraught as if they’d been through a frightening experience.”

Fort Worth Police Officer Keith Savoy was on duty that night when he received a call that the Subway restaurant had been robbed.  While Officer Savoy was en route to the restaurant, he saw another officer, Ensey, at a Sonic restaurant; she was out of her car, approaching a man.  Officer Savoy subsequently discovered that the man had first been seen about half a block from the Subway restaurant.  Officer Savoy thought that Ensey was going to have a problem with the man, so he pulled his car up to block the man’s route.  He then left his car to assist Ensey.

According to Officer Savoy, the man appeared to match the general description of the robbery suspect, so he patted the man down for weapons.  During the patdown, he found a folding knife with a three-inch blade.  After he and Ensey took the man to Ensey’s car, Officer Savoy obtained a more detailed description of the Subway robbery suspect, which came from one of the employees of the Subway restaurant through Officer Fineman.  The description matched the man apprehended by Officer Savoy and Ensey. 

Ten or fifteen minutes after Tuan spoke with the police on the phone, Ensey arrived at the restaurant with Goessler in the back of her car, and Tuan identified Goessler as the robber.  According to Tuan, Goessler was wearing the same clothes as the robber.  Kim did not go outside and identify anyone.  That same night, however, she went to the police station and was asked by the police to identify the man whom she had seen, using a photo spread.  She did not pick Goessler’s photograph; instead, she picked someone who looked similar to Goessler.  Because Tuan identified Goessler at the scene, he was never shown a photo spread.

At trial, Officer Savoy identified Goessler as the man apprehended by him and Ensey, and Tuan identified Goessler as the robber.  Tuan testified that when the robber asked for the money, Tuan feared that he could have been injured or threatened with death.  He admitted that he never saw a gun or a knife at the drive-through window, and when the robber came to the front door, he did not pull a gun or knife, try to cut open the door, or say “open this door.”  

Kim testified that she never gave the robber permission to take the money.  She also admitted that the robber did not threaten her and that she did not see him with a gun or a knife.  Finally, Kim testified that there was no money or property taken from the restaurant that evening. 

Based on the above evidence, the jury found Goessler guilty of robbery and aggravated robbery.  After Goessler pled “true” to the habitual offender allegations in the indictment, the trial court assessed punishment at thirty-five years’ confinement for each count, to be served concurrently.  This appeal followed. 

III. Sufficiency of the Evidence

In his first and second points, Goessler challenges the legal and factual sufficiency of the evidence to support his convictions.  

A. Standards of Review

In reviewing the legal sufficiency of the evidence to support a conviction, we view all the evidence in the light most favorable to the verdict in order to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.  
Jackson v. Virginia
, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); 
Burden v. State
, 55 S.W.3d 608, 612 (Tex. Crim. App. 2001).  This standard gives full play to the responsibility of the trier of fact to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts.  
Jackson
, 443 U.S. at 319, 99 S. Ct. at 2789.  When performing a legal sufficiency review, we may not sit as a thirteenth juror, re-evaluating the weight and credibility of the evidence and, thus, substituting our judgment for that of the fact finder.  
Dewberry v. State
, 4 S.W.3d 735, 740 (Tex. Crim. App. 1999), 
cert. denied
, 529 U.S. 1131 (2000).

In reviewing the factual sufficiency of the evidence to support a conviction, we are to view all the evidence in a neutral light, favoring neither party.  
See Zuniga v. State
, No. 539-02, 2004 WL 840786, at *4 (Tex. Crim. App. Apr. 21, 2004).  The only question to be answered in a factual sufficiency review is whether, considering the evidence in a neutral light, the fact finder was rationally justified in finding guilt beyond a reasonable doubt.  
Id
.
 at *7.  There are two ways evidence may be factually insufficient:  (1) the evidence supporting the verdict or judgment, considered by itself, is too weak to support the finding of guilt beyond a reasonable doubt; or (2) when there is evidence both supporting and contradicting the verdict or judgment, weighing all of the evidence, the contrary evidence is so strong that guilt cannot be proven beyond a reasonable doubt.  
Id
.  “This standard acknowledges that evidence of guilt can ‘preponderate’ in favor of conviction but still be insufficient to prove the elements of the crime beyond a reasonable doubt.”  
Id
.  In other words, evidence supporting a guilty finding can outweigh the contrary proof but still be insufficient to prove the elements of an offense beyond a reasonable doubt.  
Id
. 
 In performing a factual sufficiency review, we are to give deference to the fact finder’s determinations, including determinations involving the credibility and demeanor of witnesses.  
Id.
 
at *4; 
Cain v. State
, 958 S.W.2d 404, 407 (Tex. Crim. App. 1997).  We may not substitute our judgment for that of the fact finder’s.  
Zuniga, 
2004 WL 840786, at *4.

A proper factual sufficiency review requires an examination of all the evidence.  
Id
. at *7, 9.  An opinion addressing factual sufficiency must include a discussion of the most important and relevant evidence that supports the appellant’s complaint on appeal.  
Sims v. State
, 99 S.W.3d 600, 603 (Tex. Crim. App. 2003).

B. Robbery Conviction

In his second point, Goessler contends that because no property was obtained and no weapon was displayed or used in the July 11, 2002 robbery, the evidence is both legally and factually insufficient to support his conviction for robbery.

Section 29.02 of the Texas Penal Code states, in relevant part, that a person commits robbery “if, in the course of committing theft as defined in Chapter 31 and with intent to obtain or maintain control of the property, he   . . . intentionally or knowingly threatens or places another in fear of imminent bodily injury or death.” 
Tex. Penal Code Ann.
 § 29.02(a)(2) (Vernon 2003). Thus, a robbery conviction does not require that the defendant obtain or maintain control of the property; instead, it requires only that he 
intend
 to obtain or control the property.  
Id.
 § 29.02(a).  The phrase “in the course of committing theft” includes conduct which occurs in an attempt to commit theft.  
Id.
 § 29.01(1).  
The actual commission of a theft is not a prerequisite to the commission of the offense of robbery;  the gravamen of robbery is the assaultive conduct and not the theft.  
Autry v. State
, 626 S.W.2d 758, 762 (Tex. Crim. App.), 
cert. denied
, 
459 U.S. 882 (1982); 
Ex parte Padron
, 16 S.W.3d 31, 34 (Tex. App.—Houston [1st Dist.] 2000, pet. ref’d).  
Therefore, proof of a completed theft is not required to establish a robbery.  
Bustamante v. State
, 106 S.W.3d 738, 740 (Tex. Crim. App. 2003); 
Maldonado v. State
, 998 S.W.2d 239, 243 (Tex. Crim. App. 1999). Finally, section 29.02 does not require that a weapon be displayed; it requires only that the defendant intentionally or knowingly threaten or place another in fear of imminent bodily injury or death.  
Tex. Penal Code Ann.
 § 29.02(a)(2); 
see, e.g., 
Cranford v. State
, 377 S.W.2d 957, 959 (Tex. Crim. App. 1964) (holding that robbery may be committed where robber makes his victim believe that he has weapon).

Tuan testified that a man walked up to the drive-through window at the Subway restaurant and told him to “sack up the money.”  There was a brown paper bag in one of the man’s hands.  Tuan stated that he was scared and that he thought that the suspect might have a gun or a knife.  After Tuan closed the drive-through window, the man ran to the front door of the restaurant and began shaking it.  Officer Fineman described Tuan as “[a]gitated, visibly shaken” and “obviously very distraught as if [he’d] been through a frightening experience.”

A few minutes after Tuan reported the incident to the police, Goessler was found by the police about half a block from the Subway restaurant.  The description from Tuan and his sister matched Goessler.  Tuan identified Goessler twice as the robber–when the police brought Goessler back to the restaurant on the night of the robbery and at trial.  Tuan also testified that when the robber asked for the money, Tuan feared that he could have been injured or threatened with death.

Viewing all the evidence in the light most favorable to the verdict, a rational jury could have concluded beyond a reasonable doubt that Goessler attempted to commit theft, that he intended to obtain money that belonged to the Subway restaurant, and that he intentionally or knowingly placed Tuan in fear of imminent bodily injury or death.  Thus, the evidence is legally sufficient to support Goessler’s robbery conviction.  
See, e.g., Hester v. State
, 909 S.W.2d 174, 178 (Tex. App.—Dallas 1995, no pet.) (holding that evidence was sufficient to identify defendant as robber where husband and wife whose apartment had been robbed unequivocally testified that defendant had committed robbery).  Likewise, viewing the evidence in a neutral light and giving due deference to the jury’s responsibility to resolve conflicts in the evidence, we cannot say that the jury’s verdict is against the great weight and preponderance of the evidence.  Thus, the evidence is factually sufficient to support Goessler’s robbery conviction.  
See, e.g., 
  
Shelton v. State
, 10 S.W.3d 689, 699 (Tex. App.—Amarillo 1999, no pet.) (holding that evidence was factually sufficient to show that defendant was perpetrator of robbery where victim identified defendant as culprit from photo spread and was positive in her identification of defendant).  
We overrule Goessler’s second point.

C. Aggravated Robbery Conviction

In his first point, Goessler asserts that the evidence is legally and factually insufficient to support his conviction for aggravated robbery
(footnote: 2) because Filiberto Moran lied as to whether a knife was used in the June 29, 2002 robbery.  According to Goessler, when the register was located and examined, no marks of any kind were found on it.  Thus, according to Goessler, Moran lied when he claimed that the cash register was “stabbed” with the knife that Goessler used. As the record indicates, a surveillance videotape of the robbery shows the robber hitting the register with an object in his right hand.  The register was subsequently found at another Subway restaurant in South Arlington more than a year after the robbery had taken place.
(footnote: 3)  Investigator Wells looked at the top of the register, where the video showed the knife coming into contact with it, but he found no marks on the register.  Thus, the evidence does not demonstrate that Moran lied.  Several other possibilities may explain the absence of any marks on the register.  For instance, the robber might not have struck the register with enough force to leave a mark.  Also, the register may have been repaired in the sixteen months between the robbery and the trial, resulting in the removal of any marks on it.   

Moreover, in reviewing the legal sufficiency of evidence, we may not re-evaulate the credibility of witnesses; that is the exclusive province of the jury. 
Wyatt v. State
, 23 S.W.3d 18, 30 (Tex. Crim. App. 2000); 
Barnes v. State
, 876 S.W.2d 316, 321 (Tex. Crim. App.), 
cert. denied
, 513 U.S. 861 (1994); 
Salazar v. State
, 131 S.W.3d 210, 212 (Tex. App.—Fort Worth 2004, pet. ref’d); 
Best v. State
, 118 S.W.3d 857, 867 (Tex. App.—Fort Worth 2003, no pet.).

Moran’s testimony provided the primary evidence against Goessler.  Moran identified Goessler as the robber. 
 Furthermore, Moran testified that Goessler displayed a knife and told Moran to get a bag and to put money in it. Moran stated that when he saw the knife, he was afraid and that he thought that the knife could have hurt him and caused him death or serious bodily injury.  Whether or not Moran lied about the robber striking the register with the knife, it was up to the jury to assess Moran’s credibility.  The jury apparently believed Moran, and we must defer to that belief.  
See Zuniga, 
2004 WL 840786, at *4;
 
Cain
, 958 S.W.2d at 407.  

Viewing all the evidence in the light most favorable to the verdict,  a rational jury could have concluded beyond a reasonable doubt that Goessler committed aggravated robbery.  Likewise, viewing the evidence in a neutral light and giving due deference to the jury’s responsibility to resolve conflicts in the evidence, we cannot say that the jury’s verdict is against the great weight and preponderance of the evidence.  Thus, the evidence is legally sufficient to support Goessler’s aggravated robbery conviction.  
Cf. Shelton, 
10 S.W.3d at 699; 
Hester
, 909 S.W.2d at 178.  
We overrule Goessler’s first point.
    

IV. Jury Arguments

In his third and fourth points, Goessler argues that the trial court erred in overruling his objections to two comments made by the State during its closing argument.

During closing argument, the following comments and exchange took place:

[STATE]:  Robbery is [to] threaten or place somebody in fear. All right.  And you got two high school kids, brother and sister. This guy--they know they’ve been robbed two weeks before.  And you get to put--take that into consideration.  You get to take the mind state--the mental state of the victim into consideration in this case.  That store has been jacked two weeks prior.

[DEFENSE]:  Your Honor.  I’m going to object.  There’s no evidence that those kids are aware of jacking two weeks before.

THE COURT:  Overruled.

[STATE]:  They got the front door locked for a reason at night.

[DEFENSE]:  Your Honor, again, I’m going to object because he’s now misleading the jury.  The door is locked because that’s the policy of the store at that time of night.  That’s misleading the jury.

THE COURT:  Overruled.

[STATE]:  It’s locked as store policy because they don’t want to be robbed through the front door by people like Mr. Goessler.

According to Goessler, the State’s remarks injected new and harmful facts in the form of the prosecutor’s personal opinion. 

To be permissible, the State’s jury argument must fall within one of the following four general areas:  (1) summation of the evidence; (2) reasonable deduction from the evidence; (3) answer to argument of opposing counsel; or (4) plea for law enforcement. 
 Felder v. State
, 848 S.W.2d 85, 94-95 (Tex. Crim. App. 1992), 
cert. denied
, 510 U.S. 829 (1993); 
Alejandro v. State
, 493 S.W.2d 230, 231 (Tex. Crim. App. 1973).  If a jury argument exceeds the bounds of proper argument, the trial court’s erroneous overruling of a defendant’s objection is not reversible error unless it affected the appellant’s substantial rights.  
Tex. R. App. P. 
44.2(b); 
Martinez v. State
, 17 S.W.3d 677, 692-93 (Tex. Crim. App. 2000); 
Mosley v. State
, 983 S.W.2d 249, 259 (Tex. Crim. App. 1998) (op. on reh’g), 
cert. denied
, 526 U.S. 1070 (1999).  In determining whether the appellant’s substantial rights were affected, we consider (1) the severity of the misconduct (i.e., the prejudicial effect of the prosecutor’s remarks), (2) curative measures, and (3) the certainty of conviction absent the misconduct.  
Martinez
, 17 S.W.3d at 692-93; 
Mosley
, 983 S.W.2d at 259.

The State argues that the prosecutor’s first comment was a reasonable deduction from the evidence and was also a matter of “common knowledge.”  The State’s “reasonable deduction” argument is based on the testimony of Officer Savoy.  During his testimony, Officer Savoy stated, “I remember personally that the store had been robbed about a week or two before.  And also after interviewing the complainant, the witness [sic] who both worked there, I was advised that it had been robbed about two weeks prior.”  Thus, the State argues that the first remark was a reasonable deduction because it may have been Tuan and Kim who told Officer Savoy that the restaurant had been robbed two weeks earlier.

Officer Savoy never testified, however, that he received this information from Tuan or Kim.  It is just as likely that Officer Savoy received the information about the previous robbery from some other source.  The State’s argument that Tuan, Kim, and Moran would have discussed the previous robbery because they were all teenagers working at the same restaurant is simply speculation.

The State also argues that the remark constituted “common knowledge” since Moran, the victim in the first incident, and Tuan and Kim were all teenagers.  According to the State, “teenagers would definitely discuss how their place of employment had been robbed and . . . such places of employment would wish to encourage their employees to be aware of potential dangers that had already occurred at such places of employment.”

The concept of “common knowledge” as  applied to jury arguments, however, goes to matters that are generally known to society at large.  
See, e.g., Milo v. State
, 214 S.W.2d 618, 618-19 (Tex. Crim. App. 1948) (holding that prosecutor’s argument that district attorney is representative of State of Texas and of society is common knowledge); 
Rodriguez v. State
, 90 S.W.3d 340, 364 (Tex. App.—El Paso 2001, pet. ref’d) (holding that State’s suggestion that $500,000 is more money than most people have is matter of common knowledge); 
Perry v. State
, 977 S.W.2d 847, 850 (Tex. App.—Houston [14th Dist.] 1998, no pet.) (holding that State’s argument that burden of proof beyond a reasonable doubt is not insurmountable, as indicated by all of the incarcerated people who have previously been convicted by proof beyond a reasonable doubt, is common knowledge); 
Torres v. State
, 754 S.W.2d 397, 401 (Tex. App.—Corpus Christi 1988, pet. ref’d) (holding that prosecutor’s argument that people die from cocaine is common knowledge).  Consequently, we cannot agree with the State’s contention that information about the prior robbery was common knowledge.

However, even if these comments to the jury were erroneous, we hold that they constituted harmless error.  Both comments went only to the requirement for a robbery conviction that the defendant “intentionally or knowingly threaten[] or place[] another in fear of imminent bodily injury.”  
Tex. Penal Code Ann.
 § 29.02(a)(2).  Other testimony and evidence strongly supported this element.  Tuan testified that he thought that Goessler might have a gun or a knife, that he was scared, and that he feared that he could have been injured or threatened with death.  Officer Fineman testified that when he arrived at the scene that night, Tuan and Kim were “[a]gitated, visibly shaken. They appeared excited and shaken.  They were obviously very distraught as if they’d been through a frightening experience.”  Given this, as well as Goessler’s conduct in ordering Tuan to “sack up the money” and in running to the front door and shaking it repeatedly, the evidence demonstrates that Goessler intentionally or knowingly threatened Tuan or placed him in fear of imminent bodily injury or death.  Furthermore, Tuan identified Goessler, both that night at the restaurant and in court, as the robber; 
Goessler was picked up by the police near the restaurant that same night; and the description of the robber by Tuan and Kim matched Goessler.

There were no curative instructions from the trial court.  However, given the abundance of evidence against Goessler and the minimal severity of the prosecutor’s remarks, we hold that any error in the trial court’s overruling of Goessler’s objections did not affect his substantial rights; thus, any such error was harmless.  
See
 
Tex. R. App. P. 44.2(
b
);
 
see, e.g., Brantley v. State
, 48 S.W.3d 318, 331 (Tex. App.—Waco 2001, pet. ref’d) (holding that prosecutor’s comments amounted to harmless error where trial court overruled defendant’s objection, but severity of misconduct was relatively small, and certainty of defendant’s conviction absent prosecutor's misconduct was strong).  We overrule Goessler’s third and fourth points.     

V. Lesser Included Offense

In his fifth point, Goessler claims that the trial court erred when it refused his request that the lesser included offense of attempted theft be included in the court’s charge.          

To determine whether a jury must be charged on a lesser included offense, we apply a two-step analysis.  
Moore v. State
, 969 S.W.2d 4, 8 (Tex. Crim. App. 1998).  The first step is to decide whether the offense is a “lesser included offense” as defined in article 37.09 of the code of criminal procedure.  
Tex. Code Crim. Proc. Ann.
 art. 37.09 (Vernon 1981); 
Moore
, 969 S.W.2d at 8.  According to article 
37.09 of the Texas Code of Criminal Procedure, “[a]n offense is a lesser included offense if . . . it consists of an attempt to commit the offense charged or an otherwise included offense.”  
Tex. Code Crim. Proc. Ann
. art. 37.09(4).

As noted earlier, a person commits aggravated robbery if he commits robbery as defined in section 29.02 of the penal code and he uses or exhibits a deadly weapon.  
Tex. Penal Code Ann.
 § 29.03.  A person commits robbery “if, in the course of committing theft as defined in Chapter 31 and with intent to obtain or maintain control of the property, he . . . intentionally or knowingly threatens or places another in fear of imminent bodily injury or death.”  
Id. 
§ 29.02.  The phrase “in the course of committing theft” includes conduct that occurs in an attempt to commit theft.  
Id.
 § 29.01(1).  Thus, because  robbery and aggravated robbery both include “in the course of committing theft,” attempted theft is a lesser included offense of both robbery and aggravated robbery.  
Cf. Teague v. State
, 628 S.W.2d 240, 243 (Tex. App.—Fort Worth 1982, no pet.) (proof of robbery requires proof of theft or attempted theft). 
The second step requires an evaluation of the evidence to determine whether there is some evidence that would permit a rational jury to find that the defendant is guilty only of the lesser offense, and not of the greater.  
Feldman v. State
, 71 S.W.3d 738, 750 (Tex. Crim. App. 2002); 
Moore
, 969 S.W.2d at 8.  The evidence must be evaluated in the context of the entire record.  
Moore
, 969 S.W.2d at 8.  There must be some evidence from which a rational jury could acquit the defendant on the greater offense while convicting him of the lesser included offense.  
Id.
  The court may not consider whether the evidence is credible, controverted, or in conflict with other evidence.  
Id.
  If there is evidence from any source that negates or refutes the element establishing the greater offense, or if the evidence is so weak that it is subject to more than one reasonable inference regarding the aggravating element, the jury should be charged on the lesser included offense.  
Schweinle v. State
, 915 S.W.2d 17, 19 (Tex. Crim. App. 1996); 
Saunders v. State
, 840 S.W.2d 390, 391-92 (Tex. Crim. App. 1992).
 

As to the aggravated robbery conviction, Goessler claims that he was entitled to a jury instruction on attempted theft because Moran lied as to whether a knife was used in the June 29, 2002 robbery.  However, as discussed above, the evidence does not show that Moran lied about the knife.  Furthermore, the evidence indicates that a robbery, including a completed theft, took place.  In addition to Moran’s testimony, the surveillance videotape shows the robber hitting the top of the register with an object in his right hand.  Moran then takes a bag from beneath the counter, opens the register, places the contents of the register into the bag, removes the drawer from the register, and hands the man the bag containing the contents of the register.  The man then exits the business.  Thus, there is no evidence that would permit 
a rational jury to find that Goessler is guilty only of attempted theft and not robbery or aggravated robbery.  
Cf. Eldred v. State
, 578 S.W.2d 721, 723 (Tex. Crim. App. [Panel Op.] 1979) (holding that before instruction on theft as lesser included offense of aggravated robbery is required, record must contain evidence showing that if defendant is guilty, he is guilty of theft only).

As to the robbery conviction, Goessler argues that no property was obtained and no weapon was displayed or used.  However, as discussed above, a robbery conviction requires neither of these.  Thus, Goessler has not adequately explained why he was entitled to an instruction on attempted theft. 
See
 
Tex. R. App. P.
 38.1(h) (requiring brief to contain clear and concise argument for contentions made, with appropriate citations to authorities and to record); 
cf. Watts v. State
,
 516 S.W.2d 414, 414-15 (Tex. Crim. App. 1974) (holding that, in prosecution for aggravated robbery, trial court’s failure to instruct on attempted aggravated robbery was not error where defendant had demanded money at gunpoint but no money was taken, since actual success of obtaining property sought is not element of offense of aggravated robbery)
.  We overrule Goessler’s fifth point.

VI. Conclusion

Having overruled each of Goessler’s points, we affirm the trial court’s judgments.

PER CURIAM

PANEL F: WALKER, J.; CAYCE, C.J.; and MCCOY, J.

DO NOT PUBLISH

Tex. R. App. P. 
47.2(b)

DELIVERED: August 19, 2004

FOOTNOTES
1:
See
 
Tex. R. App. P.
 47.4.

2:
Section 29.03 of the Texas Penal Code states, in relevant part, that a person commits aggravated robbery if he commits robbery as defined in section 29.02, and he uses or exhibits a deadly weapon.  
Tex. Penal Code Ann.
 § 29.03(a)(2).

3:
The robbery took place on June 29, 2002.  The register was found on the morning of the trial, October 28, 2003.