COURT
OF APPEALS

                                       SECOND
DISTRICT OF TEXAS

                                                   FORT
WORTH

 

 

                                        NO.
2-04-233-CR

 

 

CARL EDWIN MARTIN, II                                                      APPELLANT

 

                                                   V.

 

THE STATE OF TEXAS                                                                STATE

 

                                              ------------

 

              FROM
THE 355TH DISTRICT COURT OF HOOD COUNTY

 

                                              ------------

 

                                             OPINION

 

                                              ------------

I. 
Introduction

A jury found Appellant Carl Edwin Martin, II
guilty of the offenses of sexual assault and indecency with a child, and the
trial judge sentenced him to life imprisonment.  In eight issues, Martin challenges his
conviction.  We affirm. 

II. 
Factual and Procedural Background








A grand jury indicted Martin on December 18, 2002
for the offense of aggravated sexual assault and indecency with a child with a
felony enhancement.  Count one of
the indictment charged that Martin, on or about the 8th day of August 1998, did
then and there intentionally or knowingly cause the mouth of the complainant, a
child younger than fourteen years of age who was not his spouse to contact his
sexual organ.  Count two of the
indictment charged that Martin, on or about the 8th day of August 1998, did
then and there intentionally, with the intent to arouse or gratify his sexual
desire, engage in sexual contact by touching the breast of the complainant, a
child younger than seventeen years of age and not his spouse. 








On February 18, 2003, Martin filed a request for
notice of State=s intention to introduce
evidence of other crimes, wrongs or acts pursuant to article 37.07 of the Texas
Code of Criminal Procedure and Texas Rule of Evidence 404(b).  On December 29, 2003, Martin filed a
request for notice of State=s
intention to introduce evidence of extraneous offenses or acts pursuant to
article 38.37, section 3 of the Texas Code of Criminal Procedure.  Martin received a response to his
requests on May 3, 2004, seven days prior to trial, listing 16 article 37.07
crimes, wrongs, or bad acts for use in the 
punishment phase; 9 article 38.37 crimes, wrongs, or bad acts for the
State=s
case-in-chief to show the state of mind and relationship between Martin and
S.D.; and 2 404(b) crimes, wrongs, or bad acts[1]
for the State=s case-in-chief for the purpose
of providing motive, opportunity, intent, preparation, plan, knowledge,
identity, absence of mistake, or accident. 
Many of the offenses noticed pursuant to article 38.37 alleged the
occurrence of the offenses on at least a monthly basis over a period of years. 








On May 4, 2004, Martin filed a motion for
pretrial evidentiary hearing to determine admissibility of extraneous offenses,
a written objection to admissibility of extraneous offense, requested findings
of fact and conclusions of law, and limiting instructions.  Prior to voir dire, Martin urged the
court to consider his motions with respect to the potential admission of
extraneous matters and requested that the trial court conduct an evidentiary
hearing outside the presence of the jury. 
Among other things, Martin specifically objected to the admission of evidence
of the extraneous offense of rape, arguing that the evidence was more
prejudicial than probative.  Martin
also argued that the State=s notice
of extraneous offenses was insufficient. 
The trial court determined that no evidentiary hearing was required and
determined that the extraneous offense evidence was admissible and that its
probative value outweighed its potential for prejudice.  The trial judge indicated, however, that
if the extraneous offense evidence supported it, he would give a limiting instruction
on extraneous offenses in the jury charge and, if requested at the time of the
presentation of the evidence, he would give a limiting instruction at the time
of the presentation of the evidence. 
Martin also urged his objection under article 38.37 of the code of
criminal procedure, arguing that article 38.37 was unconstitutional and in
violation of the Sixth Amendment right to a trial in front of an impartial
jury.  The trial court overruled
Martin=s
objection to article 38.37's constitutionality.

After the jury was impaneled and sworn but before
opening argument, Martin again raised his objections as to proper notice and
unfair prejudice.  The trial court
heard evidence from S.D. outside the presence of the jury and ruled that the
noticed extraneous offense evidence was admissible and that its probative value
outweighed its potential for prejudice. 








At trial, the complainant testified that she was
approximately five years old when she first met Martin.  She testified that her parents were
divorced and that Martin was her mother=s
boyfriend.  She stated that she
initially liked Martin, that he was nice, and that he treated her mother and
sister well.  She indicated,
however, that as she got older things changed.  She testified that at age eleven, Martin
began to play a game with her in which she would stand up and fall back without
bending her knees, trusting that Martin would catch her.  She stated that it was during this game
that Martin began to touch her breasts and that one day when she fell back on
him she felt his erect penis.  

S.D. testified that while she was in the eighth
grade, she would talk with Martin about her friends and how they were smoking
cigarettes and experimenting with marijuana and other stuff.  She stated that he told her that Ait was
okay, everybody did it, and that if [she] wanted to do it that [she] should
[come] to him first.@  She testified that he provided her with
cigarettes. One day, in response to her inquiry as to whether he had ever
smoked pot, he responded by stating that Ahe had
and he still does and that he just happened to have a joint on him.@  She testified that he then provided her
with some marijuana and that she went to her room and smoked it.  She testified that she and Martin also
talked about her boyfriends and how far her and her boyfriends had gone
sexually. Martin told  her that sex
was okay, that it was healthy, and that it was just sex.  She stated that at age thirteen, Martin
told her that he was no longer having sex with her mother because her mother
had gained weight, was too fat, and that he did not enjoy it.  She stated that he would tell her how
beautiful she was, how nice her body was, and how her breasts were so perfect. 








S.D. testified that while she was in the ninth
grade, she confided in Martin that she was no longer a virgin.  She indicated that his response was to
write her a check for Alike $150@ and to
tell her that he would give her a check each week if she would have sex with
him.  She stated that Martin told her
that, in addition to the money, she could have cigarettes and smoke pot with
him whenever she wanted and that he would provide her transportation to her
boyfriend=s house.  She testified that she told him that she
would think about it.  S.D. then
testified regarding an incident in which she requested a ride to her boyfriend=s house;
for the ride, Martin required that she touch his penis.  She stated that she was scared and
started crying, to which Martin suggested that he touch her.  She testified that Martin then got
behind her, put his hand on her breast, and pinched her nipples.  She testified that afterwards he took
her to her boyfriend=s house.  She stated that this was the first time
that he had touched her breast under her clothes, that she was fourteen at the
time, and that she was in the ninth grade.








S.D. then testified that whenever she asked
Martin for marijuana or rides to her boyfriend=s house,
Martin would require that she do something sexual with him.  She testified that for a couple of
months breast touching was enough, but after that he told her the sexual
activity would need to progress if he was to keep doing things for her.  She stated that he told her the next
step was to touch his penis, and then she described a time when she did so in
exchange for marijuana.  She
testified that at age sixteen, Martin requested that she perform oral sex on
him and that when she tried to put him off, he threatened to report her
boyfriend for statutory rape.  She
stated that she gave him oral sex, but that he told her it was not good enough,
that she Ashould do it like her mom used
to,@ i.e.,
that she should use Aher hands as well as her mouth.@  S.D. testified that Ait was
horrible,@ that she Ahated
him,@ and
that Ait was
like [she] just felt dead inside.@  Finally, S.D. testified regarding a time
when she called Martin for help while stranded with a flat tire with her
boyfriend in Fort Worth.  She stated
that Martin drove from Granbury to Fort Worth and repaired the tire, then he
insisted that she ride with him to Granbury. She testified that upon their
return home, Martin told her that he was going to have sex with her.  She stated that she told him that she
did not want to but that he told her she really did not have a choice.  She testified that he told her to go
into the bedroom and take off her pants; after she did so, he got on top of
her, told her to open her legs, and Aput his
penis inside of [her].@  She testified that she was crying and
shaking such that he had to hold her arms back. 













In November 2001, S.D. told her probation officer
of the sexual abuse.[2]  S.D. was subsequently interviewed by
Heather Brogan with Child Protective Services (CPS) regarding her outcry.  In that interview, S.D. recanted and indicated
that she did not want to discuss the matter.  At trial, S.D. testified that between
the time of her outcry to her probation officer and the time of her initial
interview with Brogan, she spoke with Martin about her outcry to her probation
officer.  She testified that Martin
told her that if all this came out, they would lose their house, have to live
in a Alittle
bitty@
apartment, and their whole family would be messed up.  She testified that she recanted because she
was scared of Martin, scared of losing their house, and scared of her mother
being upset.  The following spring,
S.D. was put in detention after a urinalysis returned positive for marijuana
use.  It was at this time that S.D.
made a second outcry to her probation officer, telling Brogan with CPS about
the sexual abuse.  Brogan testified
regarding both interviews with S.D. 
The trial court admitted into evidence the videotapes of both
interviews.  Several other persons
testified at trial, including S.D.=s
mother, who testified that S.D told her, following S.D.=s
initial outcry to her probation officer, that Martin had raped her.  S.D=s mother
admitted that she did not report the abuse.   Martin testified in his own
defense, denying S.D.=s allegations.

A jury convicted Martin of the lesser included
offense of sexual assault and of indecency with a child.  He pleaded true to the enhancement
paragraph.  The trial court assessed
punishment for both counts at life imprisonment.

III. 
Extraneous Offense Evidence of Rape

In his first issue, Martin contends that the
trial court abused its discretion by admitting, over objection, extraneous
offense evidence against him that he raped S.D.  Specifically, Martin argues that S.D.=s
testimony, regarding an occasion in which she alleged that Martin Aput his
penis inside of [her],@ was substantially more
prejudicial than probative and thus inadmissible under Rule 403 of the Texas
Rules of Evidence.  Tex. R. Evid. 403.  The State responds that the evidence was
statutorily relevant pursuant to article 38.37 of the Texas Code of Criminal
Procedure,[3]
and that the trial court performed a proper balancing test under Rule 403 in
determining the evidence to be more probative than prejudicial. 








A. Admissibility

Under Rule 404(b), evidence of other crimes,
wrongs, or bad acts is inadmissible if it is offered to prove the character of
a person in order to show action in conformity therewith.  Tex.
R. Evid. 404(b). 
Notwithstanding Rule 404, evidence of other crimes, wrongs, or bad acts
committed by a defendant against a child who is the victim of the alleged
offense is admissible for its bearing on relevant matters, including the state
of mind of the defendant and the child and the previous and subsequent
relationship between the defendant and the child.  Tex.
Code Crim. Proc. Ann. art. 38.37, ' 2; Jones
v. State, 119 S.W.3d 412, 420 (Tex. App.CFort
Worth 2003, no pet.).  However,
evidence that is admissible under article 38.37 may be excluded under Rule 403
if its probative value is substantially outweighed by the danger of unfair
prejudice.  See Tex. R. Evid. 403; Jones, 119
S.W.3d at 421. 

B. Rule 403 Balancing Test/Standard of Review








In evaluating the trial court=s
determination under Rule 403, a reviewing court is to reverse the trial court=s
judgment Ararely and only after a clear
abuse of discretion,@ recognizing that the trial
court is in a superior position to gauge the impact of the relevant evidence. Mozon
v. State, 991 S.W.2d 841, 847 (Tex. Crim. App. 1999); Jones, 119
S.W.3d at 421-22.  When the relevant
criteria are viewed objectively and lead to the conclusion that the danger of
unfair prejudice substantially outweighs the probative value of the proffered
evidence, the appellate court should declare that the trial court erred by
failing to exclude it.  Montgomery
v. State, 810 S.W.2d 372, 392 (Tex. Crim. App. 1991) (op. on reh=g); Jones
119 S.W.3d at 422. 

The trial court's balancing determination must be
measured against the relevant criteria by which a Rule 403 decision is
made.  Mozon, 991 S.W.2d at
847.  The relevant criteria in
determining whether the prejudice of an extraneous offense substantially
outweighs its probative value include; (1) how compellingly the extraneous
offense evidence serves to make a fact of consequence more or less probableCa factor
which is related to the strength of the evidence presented by the proponent to
show the defendant in fact committed the extraneous offense,  (2) the potential the other offense
evidence has to impress the jury Ain some
irrational but nevertheless indelible way,@ (3) the
time the proponent will need to develop the evidence, during which the jury
will be distracted from consideration of the indicted offense, and (4) the
force of the proponent's need for this evidence to prove a fact of consequence,
that is, does the proponent have other probative evidence available to him to
help establish this fact, and is this fact related to an issue in dispute.  Id. (citing  Montgomery, 810 S.W.2d at 389‑90).


 








C. Analysis 

Martin argues that the prejudicial effect of the
extraneous offense evidence was substantially outweighed by its probative
value.  Specifically, he argues,
citing this court in Jones v. State, that the objected-to evidence
should not have been admitted because evidence of the penetration of S.D.=s sexual
organ with his penis was equal to or more heinous than the indicted offenses of
oral sex and breast touching.  See
119 S.W.3d at 422-23 (indicating that all the extraneous acts involving the
complainant were less heinous than evidence relating to charged offenses and
determining that emotional weight of such evidence was not likely to create
such prejudice in minds of jury such that they would have been unable to limit
their consideration of evidence to its proper purpose).  He also argues that S.D.=s
testimony that she was crying and shaking during the rape had the potential to
impress the jury in some irrational but nevertheless indelible way, that the
testimony of the rape of a girl is just naturally and inherently inflammatory,
and that the objected-to evidence does not tend to make a fact of consequence
any more likely; rather, he argues that the Aonly
corroborative force@ of the evidence was to show
that he was behaving in conformity with his character.  Finally, Martin argues that if the State
had other probative evidence available to it, this court should find that the
trial court abused its discretion by admitting the evidence.  








The State responds that the probative value of
the evidence was not outweighed by the danger of unfair prejudice.  In support of its position, the State
argues that the evidence was necessary to show that Martin was acting with the Aintent
to arouse or gratify his sexual desire@ and to
rebut Martin=s  claim of fabrication.  The State concedes that the objected-to
evidence does carry some emotional weight but argues that it was not likely to
create unfair prejudice in the minds of the jury.  Finally, the State asserts that it did
not take an excessive amount of time in developing this testimony.   

Applying the Rule 403 balancing criteria set out
in Mozon and Montgomery, we conclude that the trial court abused
its discretion by  admitting the
objected-to extraneous offense evidence. 
See 991 S.W.2d at 847; 810 S.W.2d at 392.  While some of S.D.=s
testimony regarding the objected-to extraneous offense evidence may have served
to make a fact of consequence slightly more probable, i.e., that Martin acted
with the intent to arouse or gratify his sexual desire, we believe the
danger of unfair prejudice substantially outweighed its probative value.  








We estimate from the record that S.D.=s direct
testimony regarding the objected-to offense took only about six pages of
approximately sixty-six pages of direct testimony.  This weighs slightly in favor of
admissibility.  However, as stated
by the court of criminal appeals, A[b]oth
sexually related misconduct and misconduct involving children are inherently
inflammatory.@  Montgomery, 810 S.W.2d at
397.  Here, S.D. was allowed to
testify in detail regarding a particularly heinous extraneous offenseCthe rape
of a young girlCand to do so in some
detail.  We believe that such
testimony has significant potential to impress the jury Ain some
irrational but nevertheless indelible way,@
creating the potential for the jury to reach a decision on an improper
basis.  Further, the record reflects
there to be substantial other evidence from which a rational jury could have
found that Martin acted with the intent to arouse or gratify his sexual
desire.  Thus, the State had little
or no need for this evidence to prove the intent element.  Nor do we believe that this evidence was
necessary for the State to rebut Martin=s claims
of fabrication.[4]  We conclude, therefore, weighing all the
factors, that the trial court abused its discretion when it found that the
danger of unfair prejudice did not substantially outweigh the probative value of
the objected-to extraneous act evidence.   

 

 








D.  Harm Analysis[5]

 We
now consider whether the trial court=s error
is reversible.  Tex. R. App. P. 44.2(b).  If the error is constitutional, we apply
Rule 44.2(a) and reverse unless we determine beyond a reasonable doubt that the
error did not contribute to Martin=s
conviction or punishment.  Tex. R. App. P. 44.2(a).  Otherwise, we apply Rule 44.2(b) and
disregard the error if it does not affect Martin=s
substantial rights.  Tex. R. App. P. 44.2(b); see Mosley
v. State, 983 S.W.2d 249, 259 (Tex. Crim. App. 1998) (op. on reh=g), cert.
denied, 526 U.S. 1070 (1999); Coggeshall v. State, 961 S.W.2d 639,
642-43 (Tex. App.CFort Worth 1998, pet. ref=d).  The erroneous admission of an extraneous
offense does not constitute constitutional error.  Avila v. State, 18 S.W.3d 736,
741-42 (Tex. App.CSan Antonio 2000, no pet.). 








Because we determine that the error is not
constitutional, Rule 44.2(b) is applicable.  Tex.
R. App. P. 44.2(b).  Therefore,
we are to disregard the error unless it affected Martin=s
substantial rights.  Id.  A substantial right is affected when the
error had a substantial and injurious effect or influence in determining the
jury=s
verdict.  King v. State, 953
S.W.2d 266, 271 (Tex. Crim. App. 1997) (citing Kotteakos v. United States,
328 U.S. 750, 776, 66 S. Ct. 1239, 1253 (1946)); Coggeshall, 961 S.W.2d
at 643.  In making this
determination, we review the record as a whole.  See Johnson v. State, 967 S.W.2d 410,
417 (Tex. Crim. App. 1998). 

Evidence of a defendant=s guilt
is also a factor to be considered in any through harm analysis.  See Motilla v. State, 78 S.W.3d
352, 358 (Tex. Crim. App. 2002). 
Factors to be considered in weighing the defendant=s guilt
in the harm analysis include the following: (1) the sufficiency of the evidence
to support the conviction; (2) the character of the error and its connection
with other evidence; and (3) whether the State emphasized the error.  See id. at 358-59.








Here, the record reflects ample evidence of
Martin=s
guilt.  S.D. testified in detail
regarding separate and distinct acts sufficient to support the jury=s
verdict as to each of the charged offenses.  In addition, the objected-to evidence
was statutorily relevant pursuant to article 38.37 of the code of criminal
procedure to show state of mind and to show the relationship between Martin and
S.D.  Tex. Code Crim. Proc. Ann. Art. 38.37.  Thus, there existed a legitimate purpose
underlying the State=s effort to admit the evidence,
and we find nothing in the record to suggest that the State offered the
evidence as a way to invoke an emotional reaction by the jury.  Moreover, the record reflects that
although the State did refer to the evidence of intercourse between Martin and
S.D. in its closing argument, the record reflects that the State did so to
rebut Martin=s claim of fabrication and to
show Martin=s state of mind, the state of
mind of S.D., and the relationship between the parties.  Further, the record reflects that the
trial court provided a limiting instruction regarding testimony of extraneous
offenses in the jury charge.  See
Morales v. State, 32 S.W.3d 862, 867 (Tex. Crim. App. 2000) (indicating a
reviewing court may also consider the trial court=s
instructions to the jury, the State=s
theory, any defensive theories, and closing arguments). Absent evidence to the
contrary, the jury is presumed to follow the instructions set forth in the
trial court=s charge.  Hutch v. State, 922 S.W.2d 166, 172
(Tex. Crim. App. 1996).  Martin has
not rebutted this presumption. 
Finally, after reviewing the record, we believe that the results of the
trial would not have been different had the trial court disallowed the
objected-to extraneous offense evidence.  See Motilla, 78 S.W.3d at 357
(holding evidence of a defendant=s guilt
is a factor to be considered in any thorough harm analysis). 

We conclude that, in the context of the entire
case against Martin, the trial court=s error
in admitting the testimony in question did not have a substantial or injurious
effect on the jury=s verdict and did not affect
Martin=s
substantial rights.  See King,
953 S.W.2d at 271.  Thus, we
disregard the error.  See Tex. R. App. P. 44.2(b).  We overrule Martin=s first
issue.








        IV.   The Requirement for a
Contemporaneous Limiting Instruction

In his third issue, Martin contends that the
trial court erred by failing to give 
a contemporaneous limiting instruction at the time the extraneous
offense evidence of rape was admitted. 
The State responds that Martin failed to request a limiting instruction
at the time the evidence was admitted. 
Consequently, the State asserts that the evidence was admitted for all
purposes and that Martin forfeited error, if any.

When evidence which is admissible as to one party
or for one purpose but not admissible as to another party or for another
purpose is admitted, the court, upon request, shall restrict the evidence to
its proper scope and instruct the jury accordingly; but in the absence of such
request the court=s action in admitting such
evidence without limitation shall not be a ground for complaint on appeal. Tex. R. Evid. 105(a).  The party opposing evidence has the
burden of  requesting the limiting
instruction at the introduction of the evidence. Hammock v. State, 46
S.W.3d 889, 895 (Tex. Crim. App. 2001). 
Further, if a limiting instruction is to be given, it must be when the
evidence is admitted to be effective. See Rankin v. State, 974 S.W.2d
707, 712 (Tex. Crim. App. 1996).  Once evidence is received without a
limiting instruction, it becomes part of the general evidence and may be used
for all purposes. See Garcia, 887 S.W.2d at 878.  













S.D.=s testimony,
regarding an occasion in which she alleged that Martin Aput his
penis inside of [her],@ would have been subject to a
limiting instruction, if one had been properly requested.  See Abdnor v. State, 871
S.W.2d 726, 738 (Tex. Crim. App. 1994). 
The first opportunity to request a limiting instruction on that portion
of S.D=s
testimony was contemporaneous with admission of the evidence.  At that point, it was apparent that a
limiting instruction was proper. 
Martin argues that he attempted to request a limiting  instruction from the court at that time
but was cut off by the prosecutor and the Court.  To preserve a complaint for our review, a
party must have presented to the trial court a timely request, objection, or
motion that states the specific grounds for the desired ruling if they are not
apparent from the context of the request, objection, or motion.  Tex.
R. App. P. 33.1(a)(1); Mosley, 983 S.W.2d at 265.  Further, the trial court must have ruled
on the request, objection, or motion, either expressly or implicitly, or the
complaining party must have objected to the trial court=s refusal to
rule.  Tex. R. App. P. 33.1(a)(2); Mendez v. State, 138
S.W.3d 334, 341 (Tex. Crim. App. 2004). 
Here, it appears that Martin objected to the extraneous evidence,
rather than requesting a limiting instruction.  Moreover, Martin=s
request for a limiting instruction after two additional witnesses testified was
untimely.  Because Martin did not
request a limiting instruction at the first opportunity, the evidence was
admitted for all purposes.  See
Hammock, 46 S.W.3d at 895 (holding when a party fails to ask for a limiting
instruction until later in the trial, evidence is admitted for all purposes); Jones,
119 S.W.3d at 424 (holding when a party requests a limiting instruction
concerning a witness=s testimony after the witness
testifies, the evidence is admitted for all purposes).  We hold that Martin forfeited any error
with respect to the trial court=s refusal
to give a contemporaneous limiting instruction with S.D.=s
testimony.  We overrule Martin=s third
issue. 

    V.  Reasonableness of the State=s Notice
of Extraneous Offense Evidence








In his second and fifth issues, Martin attacks
the reasonableness of the State=s notice
of extraneous offenses.  In his
fifth issue, Martin argues that the trial court erred by admitting the
extraneous offense evidence because the State=s notice
was not reasonable notice in advance of trial as required by article 38.37 of
the Texas Code of Criminal Procedure and Rule 404(b) of the Texas Rules of
Evidence.  See Tex. R. Evid. 404(b); Tex. Code Crim. Proc. Ann. art. 38.37, ' 3.  In his second issue, citing the Fifth,
Sixth, and Fourteenth Amendments to the U.S. Constitution, Martin argues that
the trial court=s error in admitting the
evidence without proper notice violated his right to select an impartial jury.[6]  See U.S. Const. amends. V, VI, XIV.

Article 38.37 of the code of criminal procedure
provides that a defendant who timely requests notice of the State=s intent
to introduce extraneous offenses during the State=s
case-in-chief is entitled to notice Ain the
same manner as the state is required to give notice under Rule 404(b).@  Tex.
Code Crim. Proc. Ann. art. 38.37, ' 3.  Rule 404(b) provides that the notice of
the State=s intent be Areasonable
notice . . . in advance of trial.@ Tex. R. Evid. 404(b).  The purpose behind the notice provision
is to adequately make known to the defendant the extraneous offenses the State
intends to introduce at trial and to prevent surprise to the defendant.  Self v. State, 860 S.W.2d 261,
264 (Tex. App.CFort Worth 1993, pet. ref=d).  Generally, what constitutes reasonable
notice under Rule 404(b) depends on the facts and circumstances of the
case.  Sebalt v. State, 28
S.W.3d 819, 822 (Tex. App.CCorpus
Christi 2000, no pet.).  We review a
trial court=s ruling as to the admissibility
of extraneous offense evidence under an abuse of discretion standard.  Mitchell v. State, 931 S.W.2d
950, 953 (Tex. Crim. App. 1996). 








Here, Martin argues that the State=s
notice, provided seven days before trial, was insufficient and unreasonable
given (1) the advance request for notice, (2) the number of offenses and
occurrences noticed, and (3) the more heinous nature of the noticed extraneous
offense of rape.  The State responds
that the trial court did not err because Martin was given sufficient and
reasonable notice in advance of trial. 
Further, the State asserts that Martin should not have been surprised by
the extraneous offenses contained in the State=s notice
because the information in the notice came from the offense report and witness
statements contained in the State=s file
which had been open to Martin=s
defense counsel since the return of the indictment.








The record reflects that Martin made a request
for notice of the State=s intention to introduce
evidence of other crimes, wrongs, or bad acts pursuant to article 37.07 and
Rule 404(b) on February 18, 2003. 
In addition, the record reflects that Martin filed a request for notice
of the State=s intention to introduce
evidence of extraneous offenses or acts pursuant to article 38.37 on December
29, 2003.  Neither side contests
that the State did not deliver its response to the foregoing requests until May
3, 2004, just seven days before trial. 
The record also reflects that at least twenty days before trial, the
State provided Martin with a copy of the second videotaped interview between
S.D. and Brogan, the CPS caseworker, wherein S.D. set forth her allegations
against Martin. 








Finally, the record reflects that prior to voir
dire, Martin objected to the reasonableness of the State=s notice
of extraneous offenses and that he re-urged that objection after the jury was
empaneled and sworn but before opening arguments.  We find nothing in the record to
indicate that Martin requested a continuance.  Having failed to do so, Martin has
waived any complaint that he was surprised by the State=s
notice.  See Koffel v. State,
710 S.W.2d 796, 802 (Tex. App.CFort
Worth 1986, pet. ref=d) (indicating failure to
request a continuance waives any error urged on appeal on the basis of
surprise) (citing Lindley v. State, 635 S.W.2d 541, 544 (Tex. Crim. App.
1982)). Further, even if we assume that Martin preserved error, we cannot say
that the trial court abused its discretion when it overruled his objections to
the reasonableness of the State=s notice
because under the circumstances of this case, we believe that the trial court
could have determined that seven days= notice
was adequate and reasonable given that the State=s file
had been open to Martin=s defense counsel since the
return of the indictment and that at least twenty days before trial the State
provided Martin=s defense counsel with a copy of
the videotaped interview between S.D. and CPS wherein S.D. sets forth her
allegations against Martin.[7]  See Self, 860 S.W.2d at 264
(holding eleven-days= advance notice of unadjudicated
matter reasonable under Rule 404(b)); Sebalt, 28 S.W.3d at 822 (holding
three days= notice before trial of intent
to use extraneous offenses in statement to police reasonable under article
38.37 and Rule 404(b)); see also Hernandez v. State, 914 S.W.2d 226, 234
(Tex. App.CWaco 1996, no pet.) (holding
notice provided on Friday before trial on Monday untimely under Rule
404(b)).  We overrule Martin=s second
and fifth issues. 

                        VI.  The Constitutionality of Article 38.37








In his fourth issue, Martin challenges the
constitutionality of article 38.37 of the code of criminal procedure.  Specifically, Martin argues that article
38.37 is overly broad, circumvents the rules of evidence prohibiting extraneous
offense evidence, and violates the Fifth, Sixth, and Fourteenth Amendments to
the United States Constitution, particularly a defendant=s right
to due process and an impartial jury. 
See  U.S. Const. amends. V, VI, XIV; Tex. Code Crim. Proc. Ann. art. 38.37. 

A.  Standard of Review

An appellate court must review the
constitutionality of a statute in light of the presumption of the statute=s
validity.  Jenkins v. State,
993 S.W.2d 133, 135 (Tex. App.CTyler
1999, pet. ref=d). We must presume that the
legislature did not act unreasonably or arbitrarily in enacting the
statute.  Ex parte Granviel,
561 S.W.2d 503, 511 (Tex. Crim. App. 1978).  The burden is on the appellant to show
that the statute is unconstitutional. 
Id. 

B.  Analysis 

Article 38.37 statutorily expands the
admissibility of extraneous acts evidence in a trial involving certain offenses
committed against a child under seventeen years of age.  It provides,

[n]otwithstanding Rules 404 and 405, Texas Rules
of Criminal Evidence, evidence of other crimes, wrongs, or acts committed by
the defendant against the child who is the victim of the alleged offense shall
be admitted for its bearing on relevant matters, including:     

(1) the state of mind of the defendant and the child; and 

(2) the previous and subsequent relationship between the defendant and
the child.

 

Tex. Code Crim. Proc. Ann. art.
38.37, ' 2.








The issue of whether article 38.37
unconstitutionally infringed upon a defendant=s right
to a fair and impartial trial was addressed by the Tyler Court of Appeals in Jenkins.  993 S.W.2d at 136.  In finding article 38.37 to be
constitutional and not violative of appellant=s due
process rights, the Tyler Court of Appeals stated that,

[t]he special
circumstances surrounding the sexual assault of a child victim outweigh normal
concerns associated with evidence of extraneous acts.  Further, the fairness of the tribunal is
preserved by a defendant=s continuing right to
challenge the witness by cross[-]examination.  Having examined article 38.37 in light
of the presumption of validity, we find the article is constitutional and not violative
of Appellant=s right to due process. 

 

Id. at 135. 









This position was subsequently adopted by the
Waco Court of Appeals in Brantley v. State, 48 S.W.3d 318, 329-30 (Tex.
App.CWaco,
2001, pet. ref=d).  We join with these two courts in holding
that article 38.37 is constitutional and not violative of Martin=s
constitutional right to due process. 
See id.; Jenkins, 993 S.W.2d at 135; see also Phelps v.
State, 5 S.W.3d 788, 798 (Tex. App.CSan
Antonio 1999, pet. ref=d) (holding appellant was not
denied right to a fair trial guaranteed by the due process clause of the
Fourteenth Amendment to the U.S. Constitution and section 19, article I of the
Texas Constitution by admission of evidence of numerous extraneous bad acts,
including nineteen that constituted criminal offenses, during the innocence or
guilt phase of the trial).  We
overrule Martin=s fourth issue. 

                      VII.  Admissibility of Victim-Impact Testimony

In his sixth issue, Martin argues that the trial court
erred by admitting testimony during the guilt innocence phase of the trial as
to S.D.=s
relationship with her fiancé at the time of trial.  Specifically, Martin complains about the
following testimony solicited by the prosecutor at trial:

[Prosecutor]:  You feel like you=ve put all this behind
you?

 

[S.D.]:  Yes.

 

[Prosecutor]:  Are there any C are you ever reminded of
this?

 

[S.D.]:  Yes, sometimes.

 

[Prosecutor]:  Can you explain that to the jury?

 

[Defense Counsel]:  I=m going to go ahead and make a relevancy
objection and C

 

[Prosecutor]:  It goes to the state of mind of the
victim, Your Honor.

 

[The Court]:  Overruled.

 

. . . . 

 








[S.D.]:  Sometimes when I=m being intimate with my
fiancé and it>s supposed to be nice and
special but sometimes when he would caress my chest and breasts, I feel so
gross and dirty and it C it disgusts me because
it reminds me of when Carl used to do it, and I=ll just pull away and it
stops after that and we can=t go on because it is just so gross.

 

[Defense Counsel]: Okay,
Your Honor, we=re renewing our objection
to the relevancy objection now.

 

[The Court]:  Overruled. 

 

[Prosecutor]:  [S.D.], has it been hard for you to come
back and go through all this?

 

[S.D.]:  Yes. Oh, my God, yes.

 

[Defense Counsel]:  May the record reflect, and with the
court reporter here, that the defendant has beenCthe
witness has been sobbing for the last five minutes, these last few minutes. 

Martin argues that S.D.=s state of
mind two years later is not relevant and that the testimony presented was
victim-impact material more suited for the punishment phase of the trial.  The State responds that S.D.=s state
of mind at the time of the offenses is statutorily relevant pursuant to article
38.37 and that the trial court did not err by admitting the evidence because
the evidence shows the pain and disgust experienced by S.D. when Martin touched
her breasts.

A.  Standard of Review








We review the trial court's decision to admit or
exclude evidence under an abuse of discretion standard.  Burden v. State, 55 S.W.3d 608,
615 (Tex. Crim. App. 2001); Green v. State, 934 S.W.2d 92, 101‑02
(Tex. Crim. App. 1996), cert. denied, 520 U.S. 1200 (1997); Montgomery,
810 S.W.2d at 379‑80.  The
test for abuse of discretion is not whether, in the opinion of the reviewing
court, the facts present an appropriate case for the trial court's action;
rather, it is a question of whether the court acted without reference to any
guiding rules or principles, and the mere fact that a trial court may decide a
matter within its discretionary authority differently than an appellate court
does not demonstrate such an abuse. 
Montgomery, 810 S.W.2d at 391.  We will not reverse a trial court's
ruling on the admission of evidence as long as the ruling is within the zone of
reasonable disagreement.  Id.

B.  Analysis








Victim-impact testimony is generally irrelevant
at guilt-innocence because it does not tend to make more or less probable the
existence of any fact of consequence at guilt-innocence. See Miller-El v.
State, 782 S.W.2d 892, 895 (Tex. Crim. App. 1990); see also Stavinoha v.
State, 808 S.W.2d 76, 78 (Tex. Crim. App. 1991).   Outside of the context of homicide
cases, victim-impact evidence is generally defined as evidence regarding Athe
physical or psychological effect of the crime on the victims themselves.@  Lane v. State, 822 S.W.2d 35, 41
(Tex. Crim. App. 1991), cert. denied, 504 U.S. 920 (1992).   Clearly S.D.=s
testimony here, regarding the impact of her memories of the crime on her
relationship with her fiancé some two years later, qualifies as
victim-impact testimony.   We
find the State=s argument that the evidence was
statutorily relevant because it shows the pain and disgust of S.D. at the time
of the offense, some two years prior, unpersuasive.  We hold that the trial court abused its
discretion by admitting S.D.=s
victim-impact testimony during the guilt-innocence phase of the trial.  

C.  Harm Analysis  

Having found error, we must conduct a harm
analysis to determine whether the error calls for reversal of the
judgment.  Tex. R. App. P. 44.2. 
A trial court=s failure to sustain a proper
evidentiary objection does not rise to the level of constitutional error.  Johnson, 967 S.W.2d at 417.  Thus, we are to disregard the error
unless it affected Martin=s substantial rights. Tex. R. App. P. 44.2(b).  








As previously discussed, the record reflects
there to be ample evidence of Martin=s
guilt.  Further, we find nothing in
the record to indicate that the State emphasized the testimony; in fact, we
note that the State did not even mention the objected-to testimony in its
closing.  We conclude that in the
context of the entire case against Martin, the trial court=s error
in admitting the testimony in question did not have a substantial or injurious
effect on the jury=s verdict and did not affect
Martin=s
substantial rights.  See King,
953 S.W.2d at 271.  Thus, we
disregard the error.  See Tex. R. App. P. 44.2(b).  We overrule Martin=s sixth
issue.

                                       VIII.  Bond Amount

In his seventh issue, Martin argues that the
trial court abused its discretion by increasing his bond to $100,000 for being
five minutes late on the second day of trial.  The State responds that the trial court
did not abuse its discretion in raising Martin=s bond
because Martin failed to timely appear for court, the charges against him were
very serious, and he was facing the possibility of a lengthy prison
sentence.  The State also argues
that Martin waived any error by failing to specify in his brief where error can
be found in the record. See Tex.
R. App. P. 33.1.

A.  Inadequate
briefing  

If a party does not refer the appellate court to the
precise pages in the record where the error allegedly occurred, the appellate
court may properly overrule the issue as inadequately briefed.  Lawton v. State, 913 S.W.2d 542, 554
(Tex. Crim. App. 1995), cert. denied, 519 U.S. 826 (1996); Alvarado
v. State, 912 S.W.2d 199, 210 (Tex. Crim. App. 1995).  Here, although Martin does not tell us
precisely where error occurred in the record, he does indicate that error
occurred on the second day of trial when the trial court raised his bond.  Accordingly, we will address Martin=s seventh
issue.  








B.  Analysis

The record reflects that Martin=s pretrial bail
was set at $25,000, that he was five to ten minutes late to court on the second
day of trial, and that as a result of his failure to timely appear, the trial
court increased his bail to $100,000. 
Shortly thereafter, the record reflects that Martin presented to the
trial court the reason for his tardiness, indicating that no disrespect was
intended and that he was not going anywhere.  Martin did not, however, lodge any objection
to the trial court=s action or complain that the amount of
bail was excessive.

To preserve a complaint for our review, a party must have
presented to the trial court a timely request, objection, or motion that states
the specific grounds for the desired ruling if they are not apparent from the
context of the request, objection, or motion.  Tex.
R. App. P. 33.1(a)(1); Mosley, 983 S.W.2d at 265.  Further, the trial court must have ruled
on the request, objection, or motion, either expressly or implicitly, or the
complaining party must have objected to the trial court=s refusal to
rule.  Tex. R. App. P. 33.1(a)(2); Mendez, 138 S.W.3d at
341.  Preservation of error is a
systemic requirement that this court should review on its own motion.  Martinez v. State, 22 S.W.3d 504,
507 n.7 (Tex. Crim. App. 2000); Hughes v. State, 878 S.W.2d 142, 151
(Tex. Crim. App. 1993) (op. on reh=g), cert.
denied, 511 U.S. 1152 (1994).













Here, although Martin explained the reason for his
tardiness to the trial court, he did not object to the trial court=s action or
complain to the trial court that the amount of his increased bail was
excessive.  Therefore, we conclude
that Martin failed to preserve for our review any complaint that the trial
court abused its discretion when it increased the amount of his bond.  Tex.
R. App. P. 33.1; see also Margoitta v. State, 994 S.W.2d 336,
338-39 (Tex. App.CWaco, no pet.) (holding appellant waived
complaint on appeal by failing to inform trial court that he viewed the amount
of bail pending appeal to be excessive). 
Further, even if we assume that Martin preserved error, we cannot say
that the trial court abused its discretion by increasing Martin=s bond
because, under the circumstances of this case, we believe that the trial court
could have reasonably determined that Martin posed a flight risk.  See Tex. Code Crim. Proc. Ann. art. 17.09, ' 3
(Vernon 2005) (providing that if the trial judge or magistrate Afinds
that the bond is defective, excessive[,] or insufficient in amount, or that the
sureties, if any, are not acceptable, or for any other good and sufficient
cause, such judge or magistrate may . . . require the accused to give another
bond in such amount as the judge or magistrate may deem appropriate@); see
also id. art. 17.15 (setting forth the rules for fixing the amount of
bail); see also In re Hulin, 31 S.W.3d 754, 760 (Tex. App.CHouston
[1st Dist.] 2000, no pet.) (indicating the likelihood of a lengthy prison
sentence is a factor to be considered in determining the amount of pretrial
bond  sufficient to secure the
presence of the accused at trial); Ex parte Scott, 122 S.W.3d 866, 869
(Tex. App.CFort Worth, 2003, no pet.)
(setting forth factors to be considered in establishing defendant=s bond);
but see Meador v. State, 780 S.W.2d 836, 837 (Tex. App.CHouston
[14th Dist.] 1989, no pet.) 
(holding trial court abused its discretion by revoking appellant=s bond
of $100,000 and increasing the amount of bond required to $200,000 because  appellant was three to five minutes late
to court and appeared without his attorney).  We overrule Martin=s
seventh issue. 

                   IX.  The Request for a Specific Limiting
Instruction 

In his eighth issue, Martin argues that the trial
court abused its discretion by refusing to give a specific limiting instruction
to the jury, either during trial or in the jury charge, instructing the jury
that they could not consider evidence of Martin=s
touching of S.D.=s breast before age twelve because
such evidence is extraneous offense evidence.  The State responds that although the
trial court refused to include the specific instruction requested by Martin,
the trial court did not err because the trial court included in the jury charge
a limiting instruction, albeit not the specific instruction requested by
Martin. 

 

 








A.  The Requirement for a
Contemporaneous Limiting Instruction

Upon request, a trial court must immediately give
a limiting instruction regarding evidence that is admitted for a limited
purpose.  See Tex. R. Evid. 105(a); Hammock, 46
S.W.3d at 894.  Because evidence of
extraneous acts is admissible for some purposes but inadmissible for others, on
request, the accused is entitled to a midtrial limiting instruction on extraneous
offense evidence.  Rankin,
974 S.W.2d at 711-12.








Here, the record reflects that the State
presented evidence regarding two breast touching incidents, one when S.D. was
eleven years old and one when she was in the ninth grade.  At the time of the State=s
presentation of the second incident of breast touching, Martin objected that he
had not been properly noticed regarding any extraneous offenses of breast
touching.  The trial court overruled
the objection.[8]  At the end of the State=s case-in-chief,
the State elected to go to the jury on the second breast touching
incident.  Martin  objected that the State=s
election made the breast touching at age eleven an extraneous offense for which
he received no notice.  Martin then
requested a special contemporaneous limiting instruction be given to the jury
informing them that they could not consider the evidence of touching around age
eleven, if any, as evidence of guilt. 
The trial court denied his request, indicating that a limiting
instruction would be given in the jury charge.  In situations such as this, a defendant
is entitled to have a limiting instruction given to the jury as to the
remaining or extraneous incidents.  See Crawford v. State, 696 S.W.2d
903, 905-06 (Tex. Crim. App. 1985). 
We hold, therefore, that the trial court erred by failing to give a
contemporaneous limiting instruction.[9]  

B.  Harm Analysis

We now consider whether the trial court=s error
is reversible.  Tex. R. App. P. 44.2(b).  As previously discussed, the erroneous
admission of an extraneous offense does not constitute constitutional
error.  See Avila, 18 S.W.3d
at 741-42.  Thus, we are to
disregard the error unless it affected Martin=s
substantial rights.  Tex. R. App. P. 44.2(b).  








Once again, we note that the record reflects  ample evidence of Martin=s
guilt.  Further, the record reflects
that the trial court included a limiting instruction in the jury charge.  Absent evidence to the contrary, the
jury is presumed to follow the instructions set forth in the trial court=s
charge.  Hutch, 922 S.W.2d at
172.  Martin has not rebutted this
presumption.  We conclude therefore
that, in the context of the entire case against Martin, the trial court=s error
in admitting the testimony in question did not have a substantial or injurious
effect on the jury=s verdict and did not affect
Martin=s
substantial rights.  See King,
953 S.W.2d at 271.  Thus, we
disregard the error.  See Tex. R. App. P. 44.2(b).  

C.   The Request for a
Specific Instruction in the Jury Charge

The record reflects that Martin requested the
following charge be read to the jury: AYou may
not consider for any purposes testimony alleging that the defendant committed
an offense by touching the breasts of [S.D.] at any time before her age 12.@  The trial court denied Martin=s
request for a specific instruction but instead instructed the jury in the
charge as follows:

You are instructed that if there is any testimony
before you in this case regarding the defendant=s having
committed offenses other than the offense alleged against him in the indictment
in this case, you cannot consider said testimony for any purpose unless you
find and believe beyond a reasonable doubt that the defendant committed such
other offenses, if any were committed, and even then you may only consider the
same in determining the intent of the defendant, if any, the state of mind of
the defendant and the child, and the previous and subsequent relationship
between the defendant and the child in connection with the offense, if any,
alleged against him in the indictment in this case, and for no other purpose.








Martin contends on appeal that the trial court
erred by not providing the jury with the specific instruction requested.   In that regard, Martin argues that
he was entitled to the specific limiting instruction because the alleged breast
touching at age eleven was so remote in time from the alleged breast touching
during the ninth grade that it probably was not even relevant and of little if
any probative value.  Under these
circumstances, Martin argues that he was entitled to the specific
instruction.  Martin does not cite
us any authority for such a proposition. 
Nor has he told us how he was harmed by the trial court=s
failure to give the specific instruction requested.  Consequently, we overrule Martin=s eighth
issue to the extent he argues that the trial court erred by failing to give the
specific instruction requested.  

                                          X.  Conclusion

Because of our disposition of Martin=s eight
issues on appeal, we affirm the trial court=s
judgment. 

 

 

 

BOB
MCCOY

JUSTICE

 

PANEL B:   DAUPHINOT, WALKER, and MCCOY, JJ.

 

PUBLISH

 

DELIVERED:  October 13, 2005








 

 











[1]The second noticed crime,
bad act, or wrong did not refer to a specific  offense, but instead advised Martin, for
purposes of Rule 404(b), that the State intended to introduce evidence of
crimes, bad acts, or wrongs previously listed in the letter under the notices
for articles 37.07 and 38.37 of the code of criminal procedure.





[2]The record reflects that
S.D. was on probation for truancy.





[3]See
Tex. Code Crim. Proc. Ann. art. 38.37, ' 2 (Vernon 2005).  On appeal, Martin does not contest the
relevancy of the evidence under article 38.37, but argues that such statutory
approval does not eliminate the need, when requested by the defendant, for the
trial court to conduct a proper balancing test under Rule 403.  Martin argues that the trial court did
not do this.





[4]In both his opening
statement and closing argument, Martin=s defense counsel argued, in effect, that S.D.
had a motive to lie and could not be believed.  Further, the record reflects that
Martin, during the guilt-innocence phase of the trial, testified in his own
defense and denied S.D.=s allegations. 





[5]We note that neither parties= brief provides us with
the benefit of a harm analysis. 





[6]To the extent that Martin=s second issue may be
construed to challenge the constitutionality of article 38.37 of the Texas Code
of Criminal Procedure, we address that contention in response to Martin=s fourth issue. 





[7]This is not to say that
the opening of the State=s file or the State=s providing Martin with a
copy of the videotaped interview served as Anotice@ to Martin of what extraneous offenses the State
intended to introduce at trial, as the court of criminal appeals had held that
the mere opening of the State=s file does not indicate an Aintent to introduce@ such evidence.  See Buchanan v. State, 911 S.W.2d
11, 15 (Tex. Crim. App. 1995). 
However, we have considered these facts in evaluating the reasonableness
of the State=s notice, just as we have
considered the volume of noticed offenses, Martin=s advance request for the
notice, and the nature of the offenses noticed. 





[8]Martin does not argue that
the trial court committed reversible error by admitting S.D.=s testimony of breast
touching at age eleven without proper notice from the State of an
extraneous offense of breast touching. 
Accordingly, we do not address that issue. 





[9]This is not to say that
Martin was entitled to the special instruction requested, just that the trial
court erred by failing to give a proper contemporaneous limiting
instruction.