

COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

|  |  |  |
|---|---|---|
| RICARDO CARRILLO, | § | No. 08-14-00174-CR |
| Appellant, | § | Appeal from |
| v. | § | 120th District Court |
| THE STATE OF TEXAS, | § | of El Paso County, Texas |
| Appellee. | § | (TC # 20120D02487) |
|  | § |  |

## **O P I N I O N**

A jury found Appellant guilty of one count of aggravated sexual assault of a child, and two counts of indecency with a child. He was sentenced to 45 years, 15 years, and 20 years respectively on these charges. He raises five issues for our review, four of which relate to the admission of extraneous offense testimony, and one that pertains to the admission of child eyewitness testimony. For the reasons that follow, we affirm.

## **FACTUAL BACKGROUND**

Viola Galvan is the great grandmother to, and has custody of, D.V. At the time of the events in question, D.V. was nine years old. Appellant was Viola Galvan's brother-in-law. He was sixty years old at time of the events in question.

When D.V. was living with Galvan in Georgia, she made an outcry. She informed her great grandmother that Appellant touched her inappropriately several months earlier when D.V.

was staying in El Paso. She said that Appellant had touched her on the vagina, "put his thing" (but "not all the way") inside her vagina, and showed her pornographic movies. These events occurred at a time when Appellant was living one house down from the home where D.V. and Galvan were living. D.V. has two younger sisters named C.J. and R.J., who live with their birth mother, Jessica Joyce. All three children were together in El Paso at the time, and played at the house where Appellant was staying.

Following the outcry, Georgia authorities were alerted and performed a forensic assessment of D.V. They found no physical evidence on the child evidencing the events, but nor would they expect marks or bruising by that time. D.V. recounted to the authorities that Appellant touched her inside her pants and shirt, had her kiss him on the lips, required her to touch his penis and rub it until ejaculate came out, and had her watch pornographic movies. She also told the Georgia investigator that "he stuck his thing in me" and that it hurt. She testified at the trial to each of these events.

Appellant was indicted and convicted on three counts. Count One alleged that he committed an aggravated sexual assault of a child younger than fourteen by penetrating D.V.'s sexual organ with his own. Count Two alleged that with intent to gratify his sexual desire, he touched D.V.'s genitals, and Count Three similarly alleged he had D.V. touch his genitals. Prior to trial, the State provided notice that it intended to offer evidence of extraneous offenses, including other sexual assaults by Appellant on D.V., Jessica Joyce, and indecency with D.V.'s younger sister, R.J. At trial, the State admitted over Appellant's objection testimony from Joyce about an incident with Appellant when she was five years old. Appellant's first four issues all relate to this extraneous offense testimony.

2

## EXTRANEOUS OFFENSE TESTIMONY

Appellant contends that the trial court erred in admitting Joyce's testimony over a Rule 403 objection (Issue One); that an improper predicate was laid for the testimony (Issue Two); and that TEX.CODE CRIM.PROC.ANN. art. 38.37 § 2(a), the statute which authorizes the admission of this evidence, is unconstitutional (Issue Three). Finally, Appellant complains of the jury charge instruction germane to the extraneous offense evidence (Issue Four). We address each in turn and discuss the relevant procedural and background facts regarding the extraneous act testimony below.

### Did the Trial Court Refuse to Consider Tex.R.Evid. 403?

In his first issue, Appellant claims that the trial court refused to perform the balancing test contemplated by TEX.R.EVID.403 with regard to the extraneous offense testimony of Joyce ("The court may exclude relevant evidence if its probative value is substantially outweighed by a danger of . . . unfair prejudice . . . ."). To place the issue in context, we recite the procedural history of how the extraneous offense testimony arose at trial. Prior to trial, the State had indicated its intention to elicit extraneous act testimony from several witnesses, including Joyce and C.J. Joyce claimed that Appellant raped her when she was five years old. She was thirty years old at the time of trial. C.J. would have testified that she saw her sister, R.J., touch Appellant's genitals. C.J. was nine at the time of trial.

Ordinarily, evidence of a "crime, wrong or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." TEX.R.EVID. 404(b)(1). Rule 404(b) has its own exceptions to that general rule, such as when the other offense is offered to provide "motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." *Id*. Rule 405 then directs how

3

character evidence must be admitted. TEX.R.EVID. 405(b). But for certain crimes--such as the offenses charged in this case--the Legislature has expressly abrogated the application of Rule 404 and 405 altogether. In 1995 the Legislature enacted the predecessor to TEX.CODE CRIM.PROC.ANN. art. 38.37(1)(West Supp. 2015) which provides that "notwithstanding Rules 404 and 405" evidence of extraneous offense testimony as between the *complaining witness* and defendant is admissible for "its bearing on relevant matters, including: (1) the state of mind of the defendant and the child; and (2) the previous and subsequent relationship between the defendant and the child." Act of May 28, 1995, 74th Leg., ch. 318, § 48(a), 1995 TEX.GEN.LAWS 2734, 2748-49 (amended 2005, 2011, 2013).

The year before the trial below, Article 38.37 was amended to add Section Two which allows, again notwithstanding Rule 404 and 405, evidence of certain extraneous offense testimony as between the defendant and a *third person.* Section Two allows such evidence to show the "character of the defendant and acts performed in conformity with the character of the defendant."[1] The bad acts covered by this exception are limited to certain designated offenses, those principally being sexual offenses against children. *Id.* at art. 38.37 § 2(b). And before this type of evidence can be admitted, the trial court must hold a hearing and make a finding that "the

---

[1] The trial started on May 19, 2014. Effective September 1, 2013, Article 38.37 was amended to add:

> (2)(b) Notwithstanding Rules 404 and 405, Texas Rules of Evidence, and subject to Section 2-a, evidence that the defendant has committed a separate offense described by Subsection (a)(1) or (2) may be admitted in the trial of an alleged offense described by Subsection (a)(1) or (2) for any bearing the evidence has on relevant matters, including the character of the defendant and acts performed in conformity with the character of the defendant.

> Sec. 2-a. Before evidence described by Section 2 may be introduced, the trial judge must:

> (1) determine that the evidence likely to be admitted at trial will be adequate to support a finding by the jury that the defendant committed the separate offense beyond a reasonable doubt; and

> (2) conduct a hearing out of the presence of the jury for that purpose.

Act of June 14, 2013, 83rd Leg., ch. 387, § 3, 2013 TEX.GEN.LAWS 1167 (current version at TEX.CODE CRIM.PROC.ANN. art. 38.37 (West Supp.2015).

evidence likely to be admitted at trial will be adequate to support a finding by the jury that the defendant committed the separate offense beyond a reasonable doubt." *Id.* at art. 38.37 § 2-a(1), (2).

In this case, during trial and outside the presence of the jury, the trial court conducted that hearing. Joyce testified to an incident when she was five years old. She fell asleep while watching television on one side of a duplex. Appellant was living on the other side of the house. He came into the room and she felt his hand on her leg. She felt his mouth on her body. He unzipped his pants and she felt pain in her "private area." The event was then interrupted by another relative who was apparently drunk and came into the room.[2] She had a recollection of several specific details, such as the color of the nightgown she was wearing, and the smell of beer on Appellant's breath. At the hearing, Appellant's counsel developed during cross examination some inconsistencies between her testimony and that in a prior statement. She also claimed to have been raped "well over 20 times" in her life by several different people. One of these prior rapes allegedly resulted in her becoming pregnant at age ten.

C.J. testified that "Richie" did the same to R.J. that he did to D.V. ("he kissed her and made her touch down there."). Appellant went by the name "Richie" to the family. The trial court disallowed this testimony from C.J., but allowed Joyce to testify to the incident described above. Joyce provided the same testimony at trial, but added some additional details, including that there was blood on the couch the next morning.

Appellant raised several objections to Joyce's testimony, including that it violated TEX.R.EVID. 403. Before making this objection, and when the parties were generally discussing the newly added section to Article 38.37, the trial judge stated:

---

[2] After entering the room, the other person heard the phone ring, picked up an iron sitting on an ironing board, and thinking it to be the phone tried to answer the call.

5

THE COURT: So it's interesting because it's not like a directed verdict, where it's a scintilla. I have to make a decision that they could find that beyond a reasonable doubt. My concern is also -- well, not it's my concern, except that I don't get to make the laws. I have to follow the laws, even the ones that I think reach, and I think this one reaches, *but it's pretty clear they wanted to sidestep 403 and 404*. They could not more clearly say they want us to overlook all these rules we learned and every other case that's interpreted 404, the weighing that a judge gets to do. I mean, very clearly they're saying, "Yeah." It's bad.

[DEFENSE COUNSEL]: The legislature is overstepping. I understand that.

THE COURT: Prejudicial stuff comes, even though that's not the case he's on trial for. (emphasis supplied)

From the italicized portion of this colloquy, Appellant contends the trial judge refused to engage in the Rule 403 balancing test and effectively ignored his Rule 403 objection.

Appellant correctly notes that even under Article 38.37, the trial court must upon request consider whether the extraneous event testimony is precluded under Rule 403. "Evidence that is relevant under Article 38.37 is 'nevertheless subject to exclusion if its probative value is substantially outweighed by the danger of unfair prejudice [.]'" *Martines v. State*, 371 S.W.3d 232, 246 (Tex.App.--Houston [1st Dist.] 2011, no pet.), *quoting Sanders v. State*, 255 S.W.3d 754, 760 (Tex.App.--Fort Worth 2008, pet. ref'd); *see also Hitt v. State*, 53 S.W.3d 697, 706 (Tex.App.--Austin 2001, pet. ref'd); *Hinds v. State*, 970 S.W.2d 33, 35 (Tex.App.--Dallas 1998, no pet.). Absent an explicit refusal to conduct the balancing test, we presume the trial court conducted the test when it overruled the objection. *Williams v. State*, 958 S.W.2d 186, 195-96 (Tex.Crim.App. 1997)(appellate courts presume trial court engaged in required balancing test once Rule 403 is invoked, and trial court's failure to conduct balancing test on record does not imply otherwise); *Sanders*, 255 S.W.3d at 760 (Rule 403 does not require the balancing analysis be performed on the record).

On this record, it is not clear to us that the trial court expressly refused to conduct a Rule 403 balancing analysis. In discussion of the new statute, and before any specific objection was

6

lodged, the trial court stated that the newly added section was meant to "sidestep 403 and 404." But later in overruling Appellant's specific objections, including a 403 objection, the trial stated that it made the findings "as required by the statute" and it was overruling the other objections that were "beyond the statute."[3] We would accordingly overrule Issue One based its initial premise that the trial court never considered the balancing test required under Rule 403.

But out of caution, we also hold that if trial court did not engage in that balance, Rule 403 would not require the exclusion of this evidence, and if it did, the error was harmless. A Rule 403 balancing test includes the following factors: (1) the probative force of the evidence, coupled with (2) the proponent's need for that evidence, balanced against (3) any tendency of the evidence to suggest decision on an improper basis, (4) any tendency of the evidence to confuse or distract the jury from the main issues, (5) any tendency of the evidence to be given undue weight by a jury that has not been equipped to evaluate the probative force of the evidence, and (6) the likelihood that presentation of the evidence will consume an inordinate amount of time or merely repeat evidence already admitted. *Gigliobianco v. State*, 210 S.W.3d 637, 641–42 & n. 8 (Tex.Crim.App. 2006). We reverse a trial court's balancing determination "rarely and only after a clear abuse of discretion." *Montgomery v. State*, 810 S.W.2d 372, 392 (Tex.Crim.App. 1990), *quoting United States v. Maggitt*, 784 F.2d 590, 597 (5th Cir.1986). Because Rule 403 permits the exclusion of admittedly probative evidence, "it is a remedy that should be used sparingly, especially in 'he said, she said' sexual-molestation cases that must be resolved solely on the basis

---

[3] In overruling all the various objection, the trial court stated:

> THE COURT: The Court, having heard the two witnesses, has made the findings that pursuant to the -- the statute and authority provided that the [Ms. Joyce] will be allowed to testify and that [C.J.] does not meet the threshold burden required by the Court. The Court makes a finding exclusively that that testimony would not permit a jury to find beyond a reasonable doubt that the other offense occurred. *I'm overruling other objections that are beyond the statute, because I know you made others.* [Emphasis added].

7

of the testimony of the complainant and the defendant." *Hammer v. State*, 296 S.W.3d 555, 568 (Tex.Crim.App. 2009). We address each of the balancing factors in turn.

### 1. Probative Value and Need

The first two *Gigliobianco* factors involve the probative value of the evidence--how strongly it serves to make more or less probable the existence of a fact of consequence to the litigation coupled with the proponent's need for that item of evidence. *Gigliobianco*, 210 S.W.3d at 641. Appellant contends that evidence of the assault on Joyce was unnecessary because the State had developed direct evidence for all of the elements of the offense as to D.V. The probative value of extraneous offense evidence is low when it buttresses only undisputed evidence that has already been admitted. *See Montgomery*, 810 S.W.2d at 390.

Appellant's argument, however, overlooks that he defended the sexual assault count by contending there was no evidence of actual penetration.[4] In D.V.'s outcry, for instance, there was a discrepancy as to whether put his penis "on" versus "in" D.V.'s vagina. Appellant pursued this defensive theory in cross-examining D.V., her grandmother, a forensic examiner, and he urged the argument in closing.

Joyce's testimony was relevant to show that Appellant, when he engaged in this kind of behavior with a child, was inclined to penetrate the child. Joyce testified that there was blood on the sofa following Appellant's sexual assault of her. She described the assault as a "rape" which certainly infers actual penetration. She recalled that it caused "a lot of pain" in her private area. A medical witness had already testified that penetration of a pre-pubescent girl often causes pain. This character conformity testimony was thus relevant to a disputed issue of fact in the case. *Cf. Beam v. State*, 447 S.W.3d 401, 405 (Tex.App.--Houston [14th Dist.] 2014, no pet.)(extraneous

---

[4] Appellant's brief in this regard largely focuses on Counts Two and Three--the indecency counts--pertaining to improper touching. Joyce's testimony, however, is more directly pertinent to the sexual assault count.

offense was probative to rebut appellant's theory that the complainant fabricated allegations). Joyce's testimony was also relevant to demonstrate the unnatural attitude and relationship Appellant had towards minor female family members. *See Sanders v. State*, 255 S.W.3d 754, 759 (Tex.App.--Fort Worth 2008, pet. ref'd); *Ernst v. State*, 971 S.W.2d 698, 700 (Tex.App.-- Austin 1998, no pet.).

And while Appellant urges that character conformity evidence is never admissible to show a defendant's conduct on a particular occasion, the Legislature in Article 37.38 has directed otherwise. *Id.* at art. 37.38 §2(b)("[E]vidence that the defendant has committed a separate offense described by Subsection (a)(1) or (2) may be admitted . . . for any bearing the evidence has on relevant matters, including the character of the defendant and acts performed in conformity with the character of the defendant.").

### 2. Unfair Prejudice

Only "unfair" prejudice provides a basis for exclusion of relevant evidence. *Montgomery*, 810 S.W.2d at 389. Unfair prejudice arises from evidence that has an undue tendency to suggest that a decision be made on an improper basis, commonly an emotional one. *Id.* In this regard, Appellant relies on *Martin v. State*, 176 S.W.3d 887, 897 (Tex.App.--Fort Worth 2005, no pet.) which held that a trial court erred in admitting evidence of a rape in a case where the charged offense involved oral sex and improper touching of a minor. There, evidence of the rape had the significant potential to impress the jury "in some irrational but nevertheless indelible way" and potentially cause the jury to reach a decision on an improper basis. *Id. quoting Montgomery,* 810 S.W.2d at 397. But even though the trial court erred by admitting the extraneous offense in *Martin*, the court of appeals ultimately found that the error was not harmful. *Id.*

9

We see a distinction between *Martin*'s facts and those here. First, the extraneous conduct at issue here was the same as that charged in Count One, while the conduct in *Martin* was different, and many might view it as worse. With respect to the sexual assault of D.V. and Joyce, the details of D.V.'s assault were also in many ways worse. Both D.V. and Joyce testified to pain when he contacted them. D.V., however, described multiple sexual encounters, while Ms. Joyce described only a single event involving Appellant. D.V. also described other conduct, such as appellant having her touch his penis until he ejaculated, and having her watch pornography. The conduct with Joyce, while shocking, was not as shocking as that with D.V. *Cf. Sanders*, 255 S.W.3d at 761 (single extraneous event with third party compared to almost daily molestation by defendant of complaining witness); *Taylor v. State*, 920 S.W.2d 319, 323 (Tex.Crim.App. 1996)("[T]he first murder, being no more heinous than the second, was not likely to create such prejudice in the minds of the jury that it would have been unable to limit its consideration of the evidence to its proper purpose.").

### 3. Confusion of the Issues

In applying Rule 403, the trial court should also consider "any tendency of the evidence to confuse or distract the jury from the main issues." *Gigliobianco*, 210 S.W.3d at 641; s*ee Santellan v. State,* 939 S.W.2d 155, 169 (Tex.Crim.App. 1997)(this factor looks to the "time the proponent will need to develop the evidence, during which the jury will be distracted from consideration of the indicted offense"). In an attempt to demonstrate this kind of confusion, appellant argues that Joyce's testimony spans thirty five pages of the trial transcript while D.V.'s testimony was completed in ten pages. But counting pages in a transcript is only one measure of testimonial significance.

The trial included one full day of guilt-innocence testimony. The State called ten witnesses and the defense called none. Of the ten witnesses called by the State, four provided

direct testimony about the assault on D.V., either as a direct witness, an eyewitness, or an outcry related witness. Two witnesses testified to issues pertaining to a taped phone call which the State claimed contained a confession. Following his arrest, and while incarcerated awaiting trial, Appellant called a relative. All outgoing phone calls from the jail are recorded (and inmates are so informed). In this phone call, Appellant told the relative that his case looked bad, that he was likely to go the penitentiary, and that he was sorry for what he had done. The admission of the telephone call was the first evidence the State admitted, and the State played the recording both to open and end its final argument. The State also called three law enforcement witnesses who testified about the investigation of D.V.'s outcry and Appellant's arrest. In the investigation, Appellant admitted to one of the officers that he was alone with D.V. in his room, that he kissed her on the lips, and she sat on his lap.

In the context of the entire case, the State's primary argument had more to do with the confession, than any reliance on Joyce. She was the only witness providing testimony about the extraneous offense involving her. We are simply not convinced that Joyce's testimony misdirected the jury from the three counts involving D.V.

### 4. Undue Weight and Needless Presentation of Cumulative Evidence

The final factors in a Rule 403 balance include "any tendency of the evidence to be given undue weight by a jury that has not been equipped to evaluate the probative force of the evidence," and "the likelihood that presentation of the evidence will consume an inordinate amount of time or merely repeat evidence already admitted." *Gigliobianco*, 210 S.W.3d at 641-42. The undue weight factor pertains to evidence which, for reasons other than emotion, might mislead a jury. The court of criminal appeals gives the example of "'scientific' evidence [that] might mislead a jury that is not properly equipped to judge the probative force of the evidence."

11

*Gigliobianco,* 210 S.W.3d at 641 (internal citation omitted). Joyce's testimony does not raise any similar concern. The jury would be equally equipped to resolve her testimony as it would D.V.'s.

Nor was Joyce's testimony overly cumulative. As stated above, the guilt innocence testimony was admitted in a single day. Joyce was the final witness. Nine previous witnesses provided testimony directed to the three charged offenses against D.V. and much of that was directed to a claimed confession. Joyce's testimony contained some unique components, including her recollection of specific details of the event and the scene, but those were elicited to support her recollection of an event which occurred some twenty-five years earlier. The time spent by the prosecutor presenting the extraneous offense evidence and the defense's time cross-examining Joyce was not significant in comparison to the total length of the trial. As such, the trial court could have reasonably concluded that the presentation of the extraneous offense evidence would not consume an inordinate amount of time. Additionally, the trial court could have determined that the extraneous offense evidence was not cumulative of other evidence presented at trial.

After balancing the Rule 403 factors, we conclude that the trial court could have reasonably determined that the probative value of the extraneous offense evidence was not substantially outweighed by the countervailing factors specified in the rule. Nor can we conclude that the trial court's ruling was outside the "zone of reasonable disagreement" which is our guiding standard in judging a claimed abuse of discretion. *De La Paz v. State*, 279 S.W.3d 336, 344 (Tex.Crim.App. 2009). Accordingly, we conclude that the trial court did not abuse its discretion by admitting the extraneous offense evidence.

12

**Harm Analysis**

The erroneous admission of extraneous offense evidence is non-constitutional error. *Johnson v. State*, 84 S.W.3d 726, 729 (Tex.App.--Houston [1st Dist.] 2002, pet. ref'd). Any error, other than constitutional error, that does not affect the substantial rights of the accused must be disregarded. TEX.R.APP.P. 44.2(b). A substantial right is affected when the error had "a substantial and injurious effect or influence in determining the jury's verdict." *Whitaker v. State*, 286 S.W.3d 355, 363 (Tex.Crim.App. 2009), *quoting King v. State,* 953 S.W.2d 266, 271 (Tex.Crim.App. 1997). If the error had no influence, or only a slight influence on the verdict, it is harmless. *Whitaker,* 286 S.W.3d at 362-63. In assessing the likelihood that the jury's decision was adversely affected by the error, we consider everything in entire record. *Id.* at 355-56. This court must calculate, to the extent possible, the probable impact of the error on the jury in light of the existence of other evidence. *Wesbrook v. State*, 29 S.W.3d 103, 119 (Tex.Crim.App. 2000). The presence of overwhelming evidence may be a factor in the evaluation of harmless error. *Id.; Motilla v. State*, 78 S.W.3d 352, 357 (Tex.Crim.App. 2002)("our conclusion . . . that overwhelming evidence of guilt is a factor to be considered . . . applies to a harm analysis conducted under the current rules.").

In reviewing the entire record here, we are not convinced the admission of Joyce's testimony, even if erroneous, had a substantial and injurious effect or influence on the jury's verdict. The evidence presented against appellant was substantial, compelling, and in our view overwhelming. D.V. identified Appellant as the person who sexually assaulted her. Her sister, C.V., witnessed some of the conduct. Appellant did not cross-examine C.V. His cross examination of D.V., taking little more than a page in the record, raised only two issues-- whether there was actual penetration, and where she was when she made the outcry. D.V.'s outcry and trial testimony were consistent and largely unchallenged. Joined with what on its face

13

appears to be a confession, we would conclude that any error in the admission of the evidence of extraneous conduct, and we have found none, was harmless. We overrule Issue One.

## **Was There an Adequate Predicate under Article 38.37?**

Article 38.378 requires the trial judge to determine whether the extraneous offense evidence "will be adequate to support a finding by the jury that the defendant committed the separate offense beyond a reasonable doubt." *Id*. at art. 38.37 § 2-a(1),(2). During the Article 38.37 hearing, the trial court discussed its perceived role in applying the statute:

> THE COURT: So the reason I was sharing that with you is because -- I mean, it requires the Court to make that determination, but really, I don't know how that's any different from any other evidence presented. They're the fact-finders, and they get to decide if that's beyond a reasonable doubt. I think that she can provide the testimony. It could be believed beyond a reasonable doubt, it could not be believed. You've got 12 people who will hear it 12 different ways. But having conducted the hearing with regard to these allegations, I'm going let them put that on.

In making its ruling, the trial court expressly permitted Appellant all the cross-examination developed in the hearing, and stated that "credibility determination needs to be made by the fact-finders." Later in the hearing, the trial court compared its role to that of the jury:

> THE COURT: Well, I mean, the issue is -- I get to make a determination. I can be wrong, I can be right, but I get to make that call. And ultimately, I think these issues are for the jury to decide. I just have to decide could they make that finding, make a determination that the evidence can support that, and that's my job. I have to decide.

In Issue Two, Appellant contends the trial court abdicated its responsibility to make that determination because it declined to consider Joyce's credibility. On this record, we reject Appellant's claim for two reasons. First, we are not convinced the trial court wholly ignored credibility issues as he claims. The trial court allowed Joyce's testimony, but excluded C.J.'s extraneous offense testimony. In disallowing C.J.'s testimony, the trial court explained its rule stating: "you have a child, who I'm struggling with credibility, testifying about another incident

14

with another child."  Because the trial court apparently considered credibility in evaluating C.J.'s testimony, we are not convinced the trial court wholly ignored issues of Joyce's credibility.

Second, the statute requires the trial court to decide if the evidence would be sufficient to support a finding that the conduct occurred under the beyond a reasonable doubt standard.  *Id*. at art. 38.37 § 2-a(1),(2).  The trial court did just that.  The law is well settled that the testimony of a child victim alone is sufficient to support a conviction for indecency with a child.  TEX.CODE CRIM.PROC.ANN. art. 38.07 (West Supp. 2015)("A conviction under Chapter 21, Section 20A.02(a)(3), (4), (7), or (8), Section 22.011, or Section 22.021, Penal Code, is supportable on the uncorroborated testimony of the victim of the sexual offense . . . ."); *see also IslasMartinez v. State*, 452 S.W.3d 874, 880 (Tex.App.--Dallas 2014, pet. ref'd)(child victim's testimony sufficient to support conviction for aggravated sexual assault); *Lee v. State*, 176 S.W.3d 452, 458 (Tex.App.--Houston [1st Dist.] 2004), *aff'd,* 206 S.W.3d 620 (Tex.Crim.App. 2006)(Generally, "[t]he testimony of a child victim alone is sufficient to support a conviction" in child sex-abuse cases.); *Martines,* 371 S.W.3d at 240 ("We liberally construe testimony given by a child victim of sexual assault, and as long as the child communicates to the fact finder that the touching occurred on a part of the body within the definition of the statute, the evidence will be sufficient.").

Were we reviewing the sufficiency of the evidence to support a conviction, we would apply the *Jackson v. Virginia,* 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979) standard which asks whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.  Credibility of the complaining witness would not enter into that analysis because, as the trial judge here noted, that is the jury's function.  *Cain v. State*, 958 S.W.2d 404, 408-09 (Tex.Crim.App. 1997)("What weight to give contradictory testimonial

15

evidence is within the sole province of the jury, because it turns on an evaluation of credibility and demeanor.); *Proctor v. State*, 356 S.W.3d 681, 685 (Tex.App.--Eastland 2011, pet. ref'd) ("The jury, as the trier of fact, was the sole judge of the credibility of the witnesses and of the weight to be given to their testimony."). Because the statute appears to ask the trial court to do no more than we would do in a sufficiency review, and because Joyce presented testimony, which if believed, would support a finding that the conduct occurred, we do not agree that the trial court erred in making the findings that it did under Article 38.37. Accordingly, we overrule Issue Two.[5]

## The Constitutionality of Article 38.37

We turn now to Issue Three. "[T]he Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In re Winship*, 397 U.S. 358, 364, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970). The clause guarantees a fair procedure for making that determination. *Long v. State*, 742 S.W.2d 302, 320 (Tex.Crim.App. 1987), *overruled on other grounds, Briggs v. State*, 789 S.W.2d 918 (Tex.Crim.App. 1990). Appellant contends that Section Two of Article 38.37 is unconstitutional under the federal Due Process Clause because it denied him that fair procedure. He claims it permits a conviction for having a bad character, as opposed to having committed a specific crime. We disagree on the facts presented here.

When reviewing the constitutionality of a statute, we presume that the statute is valid and that the Legislature acted reasonably in enacting it. *Rodriguez v. State*, 93 S.W.3d 60, 69

---

[5] The State raises forfeiture as to this Issue which we do not reach. The State claims that Appellant never objected to the determination that the trial court made under Article 38.37 § 2-a. Appellant did argue below that the witnesses lacked credibility to sustain a beyond a reasonable doubt finding, and in the face of that argument, the trial court nonetheless made the required Article 38.37 finding. This would seemingly fulfill the oft quoted requirement from *Lankston v. State*, 827 S.W.2d 907, 909 (Tex.Crim.App. 1992) that "all a party has to do to avoid the forfeiture of a complaint on appeal is to let the trial judge know what he wants, why he thinks himself entitled to it, and to do so clearly enough for the judge to understand him at a time when the trial court is in a proper position to do something about it."

(Tex.Crim.App. 2002); *Smith v. Davis*, 426 S.W.2d 827, 831 (Tex. 1968). As we explain below, an analogous federal rule, and both Section One and Section Two of Article 38.37 have consistently been upheld as constitutional under the Due Process Clause. Appellant offers no compelling reason to stray from these established precedents.

In federal court, FED.R.EVID. 413 addresses the admission of other crimes testimony in child molestation cases. Like Article 38.37, it permits such testimony for any purpose, including character conformity. FED. R. EVID. 413(a)("In a criminal case in which a defendant is accused of a sexual assault, the court may admit evidence that the defendant committed any other sexual assault. The evidence may be considered on any matter to which it is relevant."); *United States v. Castillo*, 140 F.3d 874, 879 (10th Cir. 1998)(Rule 414 allows prosecution to use evidence of defendant's prior acts to prove defendant had a disposition of character, or propensity, to commit child molestation). So long as a defendant can assert a Rule 403 objection, the federal courts have held that Rule 413 does not violate the Due Process Clause. *U.S. v. LeMay*, 260 F.3d 1018, 1026 (9th Cir. 2001); *United States v. Mound,* 149 F.3d 799, 801 (8th Cir. 1998)(Rule 413 does not violate the Due Process Clause because "it was within Congress's power to create exceptions to the longstanding practice of excluding prior-bad-acts evidence"); *United States v. Enjady,* 134 F.3d 1427, 1433 (10th Cir. 1998)("Considering the safeguards of Rule 403, we conclude that Rule 413 is not unconstitutional on its face as a violation of the Due Process Clause.").

Section One of Article 38.37, which allows evidence of extraneous offenses committed against the complaining witness by the accused, has long been upheld as constitutional as against due process challenges. *Brantley v. State*, 48 S.W.3d 318, 330 (Tex.App.--Waco 2001, pet. ref'd); *Martin v. State*, 176 S.W.3d 887, 902 (Tex.App.--Fort Worth 2005, no pet.); *Jenkins v. State,* 993 S.W.2d 133, 136 (Tex.App.--Tyler 1999, pet. ref'd); *Phelps v. State,* 5 S.W.3d 788,

17

798 (Tex.App.--San Antonio 1999, pet. ref'd). More recently, two courts of appeals have upheld the constitutionality Section Two of Article 38.37, the very provision at issue here. *Belcher v. State*, 12-14-00115-CR, 2015 WL 5139309, at *6 (Tex.App.--Tyler Sept. 2, 2015, no pet. h.); *Harris v. State*, 14-14-00152-CR, 2015 WL 4984560, at *6 (Tex.App.--Houston [14th Dist.] Aug. 20, 2015, pet. ref'd). Both decisions explain the Legislature's purpose in modifying Rule 404 in the unique area of child molestation cases, and the safeguards built into the statute. Those safeguards include a limitation on the type of extraneous offense testimony that would be admissible, a requirement for a pretrial hearing and required findings by the trial court, and the availability of a Rule 403 challenge. We agree with the reasoning of the *Belcher* and *Harris* courts and accordingly overrule Issue Three.

## Did the Trial Court Commit Egregious Charge Error?

Issue Four complains of charge error. The court's charge instructed the jury that it could not consider the other offense evidence unless the jury found beyond a reasonable doubt that Appellant committed such an offense. Even then, the charge stated that the "defendant is not on trial for any act, conduct, or offense not alleged in the indictment." Instead, the evidence could only be considered "in determining the character of the defendant, if any, in connection with the offenses alleged against him in the indictment in this case and for no other purpose." Appellant contends that the charge thus directed the jury to consider the other acts evidence for a forbidden purpose--character conformity. In this regard, Appellant relies on *Montgomery v. State,* 810 S.W.2d 372, 392 (Tex.Crim.App. 1990)(op. on reh'g) and *Albrecht v. State,* 486 S.W.2d 97, 100 (Tex.Crim.App. 1972) which state that the accused should be tried on the allegations in the indictment, and not some collateral crime or for being a criminal generally.

18

But Appellant does not address the explicit text of Article 38.37 which permits the admission of extraneous offense evidence "for any bearing the evidence has on relevant matters, including the character of the defendant and acts performed in conformity with the character of the defendant." TEX.CODE CRIM.PROC.ANN. art. 38.37 § 2(b)(West Supp. 2015). The 2013 amendment to Article 38.37 post-dates both *Montgomery* and *Albrecht*. We view Article 38.37 § 2(b) as expressly permitting the jury to consider this type of evidence for character conformity so long as the safeguards in the statute are met. Accordingly, we do not find the charge to be in error.

Moreover, we review Appellant's charge error here for egregious harm because no objection was raised below to the charge. As such, we would only reverse the conviction if "the error was fundamental in the sense that it was so egregious and created such harm that the defendant was deprived of a fair and impartial trial." *Villarreal v. State*, 453 S.W.3d 429, 433 (Tex.Crim.App. 2015). Even were the charge erroneous, we would not find any error to be egregious. The charge itself reminded the jurors that appellant was not on trial for any act not alleged in the indictment. The charge also limited the jury's consideration of the evidence only to character conformity, thus excluding the other Rule 404 exceptions for which it might have been argued, such as "motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." *Id*. If anything, the charge benefited Appellant by restricting the consideration of the evidence to only one possible use by the State. We overrule Issue Four.

**ADMISSION OF CHILD EYEWITNESS TESTIMONY**

In Issue Five, Appellant complains of the admission of testimony of an eyewitness, C.J., because she failed to make an in court identification of Appellant. C.J. was nine years old at the

time of the trial. She testified that she saw "Richie" twice kiss D.V. and make D.V. touch him in the privates. When first asked if she saw Richie in the courtroom, she said no. Later in her testimony, however, she was asked why she kept looking over at Appellant and she stated that "he looks like Richie." Testimony from other witnesses showed that Appellant went by the name "Richie" to the family. Appellant also apparently looked somewhat different at trial than in his booking photo because he had shaved his goatee.

Generally, we review a trial court's decision on the admission of evidence for an abuse of discretion. *Miller v. State*, 36 S.W.3d 503, 507 (Tex.Crim.App. 2001). Stated otherwise, we must uphold the trial court's ruling if it was within the zone of reasonable disagreement. *Weatherred v. State*, 15 S.W.3d 540, 542 (Tex.Crim.App. 2000); *Montgomery v. State*, 810 S.W.2d 372, 391 (Tex.Crim.App. 1990).

While in-court identification of the accused might be preferred, it is not a precondition to admissibility of testimony. *Adams v. State*, 418 S.W.3d 803, 810 (Tex.App.--Texarkana 2013, pet. ref'd); *Meeks v. State,* 897 S.W.2d 950, 955 (Tex.App.--Fort Worth 1995, no pet.); *Purkey v. State,* 656 S.W.2d 519, 520 (Tex.App.--Beaumont 1983, pet. ref'd). Identity may also be shown by circumstantial evidence and the reasonable inferences therefrom. *Roberson v. State,* 16 S.W.3d 156, 167 (Tex.App.--Austin 2000, pet. ref'd). In *Meeks v. State,* for instance, the complainant testified that a babysitter named "Johnny" sexually assaulted her. 897 S.W.2d 955. The complainant's mother testified that Johnny Meeks and his wife were in charge of babysitting the complainant and "Johnny" was identified as "Johnny Meeks." *Id*. The failure of complainant to make a formal in court identification went to the weight and credibility of the witness. *Id.* Likewise, on this record appellant was identified as "Richie" and D.V. had already testified that "Richie" was the person who sexually assaulted her. Other testimony placed D.V.

20

and C.J. at the residence where Appellant lived in the same time frame as when the sexual assault took place. We accordingly overrule Issue Five and affirm the conviction below.

August 24, 2016

ANN CRAWFORD McCLURE, Chief Justice

Before McClure, C.J., Rodriguez, and Hughes, JJ.

(Do Not Publish)